**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**January 22, 2004**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 03-40725
(Summary Calendar)

HOME DEPOT U.S.A., INC.,

Plaintiff-Appellee,

versus

FEDERAL INSURANCE COMPANY,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas
(4:02-CV-95)

BEFORE JOLLY, WIENER, and DENNIS, CIRCUIT JUDGES.

PER CURIAM:[*]

In this liability insurance coverage dispute, we are asked to
determine whether an insurance company had a duty to defend an
insured in a state court lawsuit (which has since settled). On
cross-motions for summary judgment, the district court denied
summary judgment for Federal Insurance Company ("Federal"), the
insurance company, and granted summary judgment in favor of Home

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Depot U.S.A., Inc. ("Home Depot"), the insured. The district court held that Federal breached its duty to defend Home Depot in personal injury litigation brought by a Home Depot customer. As explained below and largely for the reasons stated in the district court's well-reasoned memorandum opinion and order, we affirm.[1]

## I.  BACKGROUND FACTS

The facts in this matter are essentially undisputed. We, therefore, adopt the district court's recitation of the salient facts and restate them in abbreviated form here.[2]

Home Depot's action for declaratory judgment has its genesis in an accident that occurred when Kathleen T. Rogers ("Mrs. Rogers") was severely injured by the fall of a rug display cabinet inside a Home Depot home improvement store in Plano, Texas. The display cabinet, which tipped over on Mrs. Rogers while she was shopping in that store, contained decorative rugs manufactured by Beaulieu, L.L.C. ("Beaulieu").

Several months later, Mrs. Rogers and her husband William E. Rogers (collectively "the Rogerses") filed suit against Home Depot and Beaulieu in Texas state court (the "Rogers litigation").[3] They alleged that Home Depot and Beaulieu were negligent because they:

---

[1] See Home Depot, U.S.A, Inc. v. Federal Insurance Co., 241 F. Supp. 2d 702 (E.D. Tex. 2003).

[2] See id. at 704-05.

[3] Subsequently, the Rogerses also sued R.D. Niven & Associates, the manufacturer of the rug display cabinet and its installer, Pro Marketing of Texas, Inc.

2

1. Were aware that the top-heavy design and its location made an accident a virtual certainty;

2. Allowed a dangerous condition to exist on Home Depot's premises;

3. Failed to adequately secure the display in place by bolting it to the floor or wall;

4. Failed to warn customers that the display was likely to tip over; and

5. Collectively they either designed, manufactured, sold, distributed, assembled, installed or maintained an inherently dangerous product in their premises as a part of their business.

More than a year before the accident in question, Beaulieu and Home Depot had entered into a Vendor Buying Agreement ("VBA") under which Beaulieu rugs would be sold by Home Depot at its retail stores. The VBA required, inter alia, that Beaulieu carry a general liability insurance policy naming Home Depot as an additional insured. At the time of the accident, Beaulieu was covered under a general liability policy issued by Federal (the "Policy"). The Policy contained a Vendor Endorsement which provided:

> Any Vendor is an insured, but only with respect to bodily injury or property damage arising out of the distribution or sale of your [Beaulieu's] products in the regular course of that vendor's business and only if products/completed operations coverage is provided under this contract.

The Policy also contained a Vendor Exclusion provision, which stated, in pertinent part:

> No vendor is an insured with respect to...any failure to make such inspections, adjustments, tests, or servicing as the vendor has agreed to make or normally undertakes

3

to make in the usual course of business, in connection with the distribution or sale of your [Beaulieu's] products.

In addition, appended to the Policy was a Liability Insurance Endorsement that included a provision entitled "Who is Insured,"[4] which specified, in pertinent part:

Under Who is Insured, the following provision is added:

* * *

Any person designated below is an insured but only with respect to liability arising out of your [Beaulieu's] operations or premises owned or rented to you.

* * *

Designated Person Or Organization

* * *

AS REQUIRED BY WRITTEN CONTRACT

In a June 2001 letter, Home Depot demanded that Federal defend it in the Rogers litigation. Federal never responded to this demand; in March 2002, Home Depot filed the instant suit in district court seeking a judgment declaring Home Depot's entitlement to defense and indemnification from Federal.

In August 2002, the Rogerses entered into a confidential settlement agreement under which Home Depot and Beaulieu agreed to pay the Rogerses for a complete release and for the voluntary dismissal of their claims with prejudice. Just days before the

---

[4] The Liability Insurance Endorsement supplemented the "Who is Insured" section of the underlying Policy.

settlement was signed, Federal executed a written agreement that it would not contend in this case that the amount paid by Home Dept to the Rogerses (1) was excessive, unreasonable, unwarranted, improvident, voluntary or unnecessary, or (2) did not constitute damages that Home Depot would be entitled to recover from Federal in the event that Home Depot established Federal's coverage liability under the Policy.

In the district court, Home Depot maintained —— as it does on appeal —— that Federal breached its duty to defend Home Depot in the Rogers litigation. Home Depot sought indemnification for the settlement amount that it paid in the Rogers litigation plus its costs, including attorney's fees, that it incurred in the Rogers litigation and in the instant action. Federal counters that the Policy does not cover Home Depot's exposure to the claims asserted by the Rogerses in state court; and that, as coverage of Home Depot for the Rogerses' claims does not exist, Federal had no duty to defend or indemnify Home Depot in the Rogers litigation. The district court granted summary judgment to Home Depot, rejecting Federal's contentions, and Federal timely filed a notice of appeal.

## II. ANALYSIS

A. STANDARD OF REVIEW

5

Our review of the district court's grant of summary judgment in favor of Home Depot is <u>de</u> <u>novo</u>.[5] As a district court's interpretation of an insurance contract is a question of law, we exercise <u>de</u> <u>novo</u> review over that determination as well.[6]

B.   THE EIGHT CORNERS RULE

The parties acknowledge that we must apply the substantive law of Texas in this diversity case. In Texas, the duty of an insurer to furnish a legal defense is analyzed under the "eight corners" or "complaint allegation" rule: "An insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy."[7] The parties do not dispute the contents of the documents we examine here in applying the eight corners rule: The Rogerses' state court complaint[8] and the Policy say what they say. Rather, the litigants contest the legal effect of the words contained in those documents.

Neither do the parties quarrel substantially about the basic principles that govern our application of the eight corners rule. "An insurer bears the burden of proving that the allegations

---

[5] <u>Salve Regina Coll. v. Russell</u>, 499 U.S. 225, 231 (1991).

[6] <u>Am. Nat'l. Gen. Ins. Co. v. Ryan</u>, 274 F.3d 319, 323 (5th Cir. 2001).

[7] <u>Nat'l Union Fire Ins. Co. v. Merchant Fast Motor Lines, Inc.</u>, 939 S.W.2d 139, 141 (Tex. 1997). <u>See</u> <u>also</u> <u>King v. Dallas Fire Ins. Co.</u>, 85 S.W.3d 185, 187 (Tex. 2002).

[8] Here, we must analyze the Plaintiffs' First Amended Original Petition, which is the Rogerses' terminal pleading. <u>See</u> <u>Cornhill Ins. PLC v. Valsamis, Inc.</u>, 106 F.3d 80, 84 (5th Cir. 1997).

6

contained in the underlying plaintiff's petition are excluded from coverage and any doubt is resolved in favor of the insured."[9]  To satisfy this burden, Federal must prove that none of the claims asserted by the Rogerses against Home Depot potentially falls within coverage of the Policy.[10]  When we analyze the underlying pleading, we focus on the factual allegations that show the origin of the damages, rather than the legal theories alleged.[11]  "The duty to defend does not depend on what the facts are, or what might be determined finally by the trier of the facts.  It depends only on what the facts are alleged to be."[12]  If the policy under examination provides coverage for any claim asserted in the underlying pleading, the insurer's duty to defend extends to the entire action.[13]

C.    THE VENDOR EXCLUSION

Federal does not contest that Home Depot is a "vendor" as that term is used in the Policy.  Instead, Federal's first line of defense is that the facts alleged in the Rogerses' First Amended

---

[9] Id. (citing Adamo v. State Farm Lloyds Co., 853 S.W.2d 673 (Tex. App. — Hous. [14th Dist.] 1993, writ denied), cert. denied, 511 U.S. 1053 (1994)).

[10] See id.

[11] Ryan, 274 F.3d at 324.

[12] Argonaut Southwest Ins. Co. v. Maupin, 500 S.W.2d 633, 636 (Tex. 1973).

[13] St. Paul Guardian Ins. Co. v. Centrum GS Ltd., 283 F.3d 709, 714 (5th Cir. 2002).

Petition implicated the Vendor Exclusion provision and, therefore, alleged only conduct that was excluded under the Policy.

The Vendor Exclusion provision of the Policy, quoted above,[14] precludes coverage for "inspections" that Home Depot "has agreed to conduct or normally undertakes to make in the usual course of business." Federal directs our attention to those factual allegations in the Rogerses' First Amended Petition which state that Home Depot failed to make inspections, tests, or adjustments to make their store safe. By focusing on these allegations, Federal insists that it owes no duty to defend because Home Depot is obligated by Texas premises liability law to make reasonable inspections.[15] We are not convinced.

To start, we agree with the district court's legal analysis that Federal has failed to proffer any evidence that Home Depot ever "agreed to make or normally undertakes to make in the usual course of business" inspections vis-à-vis the rug display cabinet or similar installations.[16] The Vendor Exclusion is silent about

---

[14] See supra p. 4.

[15] Federal cites to such cases as Rosa v. Buddies Food Store, 518 S.W.2d 534, 536-37 (Tex. 1975) and Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1988) to show that, under Texas law, Home Depot owed a duty to exercise reasonable care to protect Mrs. Rogers from known or discoverable dangerous conditions in the store.

[16] Home Depot, 241 F. Supp. 2d at 708.

inspections that may be compelled by law.[17]  Furthermore, Federal's approach would have us ignore other factual allegations in the Rogerses' complaint.  For example, the Rogerses also alleged that (1) the display cabinet was top-heavy by design; (2) Home Depot failed properly to secure the display cabinet to the floor or wall; and (3) Home Depot failed to warn customers of the display cabinet's dangers.  Independently, these other allegations — which have nothing to do with "inspections, adjustments, tests or servicing" — have the potential of giving rise to claims that the Vendor Exclusion simply cannot be read to preclude.  And, because Federal must defend Home Depot against the <u>entire</u> action if any one or more of the Rogerses' claims are covered, Federal's appeal to the law of premises liability is unavailing.

D.    THE "PRODUCT"

Federal's second defensive position is that Home Depot is not entitled to coverage under the Policy unless the Rogerses' damages arose from the distribution or sale of Beaulieu's "products."  And, advances Federal, because the display cabinet was neither manufactured by Beaulieu nor offered for sale by Home Depot, the cabinet could not be a Beaulieu "product," and Federal owes no duty to defend Home Depot in the <u>Rogers</u> litigation.

The Policy defines "product" to include "any goods or products...manufactured, sold, handled, distributed or disposed of

_____

[17] We express no opinion on what inspections, if any, would have satisfied Home Depot's duty to exercise reasonable care here.

9

by" Beaulieu.  The "products" in question here are the rugs "manufactured" by Beaulieu, not the cabinet in which they were displayed.  Yet Federal would have us analyze whether the display cabinet qualifies as a "product."  This classic red herring only confuses the issue.  The question is simply whether Mrs. Rogers' bodily injury "ar[ose] out of the distribution or sale" of the rugs.  We have ruled that, when used in an insurance policy, the words "arising out of" are "broad, general, and comprehensive terms effecting broad coverage."[18]  Thus, we understand these words to mean "originating from," "having its origin in," "growing out of" or "flowing from."[19]  It would be inconsistent, to say the least, to read the Policy to say that Mrs. Rogers' injury did not originate from or flow from Home Depot's sale of the Beaulieu rugs.[20]  The Rogerses' damages may not have arisen out of the sale or distribution of the display cabinet, but they certainly did arise out of Mrs. Rogers' shopping for Beaulieu's rugs at Home

---

[18] Am. States Ins. Co. v. Bailey, 133 F.3d 363, 370 (5th Cir. 1998) (quoting Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co., 189 F.2d 374, 378 (5th Cir. 1951)); Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co., 197 F.3d 742, 747 n.5 (5th Cir. 1999).

[19] Bailey, 133 F.3d at 370; Jarvis Christian Coll., 197 F.3d at 747 n.5.  See also General Agents Ins. Co. v. Arredondo, 52 S.W.3d 762, 767 (Tex. App. — San Antonio 2001, pet. denied).

[20] See Old Am. County Mut. Fire Ins. Co. v. Renfrow, 90 S.W.3d 810, 815 (Tex. App. — Fort Worth 2002, no pet.) ("Terms in contracts are to be given their plain, ordinary meaning unless the contract shows that particular definitions are used to replace the ordinary meaning.").

Depot's store, in which those rugs were displayed for sale in that cabinet. Federal's contention on this point approaches frivolousness.

E.    DISTINCT COVERAGE UNDER THE LIABILITY INSURANCE ENDORSEMENT

Federal's third point on appeal challenges the district court's alternative holding that the Liability Insurance Endorsement extended coverage to Home Depot, separate and apart from the Vendor Endorsement in the Policy.[21]  Because we hold that the Vendor Endorsement requires Federal to defend Home Depot in the Rogers litigation, we need not reach this alternate basis for holding Federal responsible.

### III.  CONCLUSION

We affirm the district court's grant of summary judgment in favor of Home Depot and its denial of Federal's motion for summary judgment.

AFFIRMED.

---

[21] See Home Depot, 241 F. Supp. 2d at 708-09 (concluding that "a vendor insured and an AS REQUIRED BY WRITTEN CONTRACT insured appear to be separate and distinct categories").