442 Mass. 675 (2004)                                    675

Makrigiannis *v.* Nintendo of America, Inc.; Sumitomo Marine and Fire Insurance Company, Ltd.

TONY MAKRIGIANNIS[1] & another[2] *vs.* NINTENDO OF AMERICA,
INC., & another[3]; SUMITOMO MARINE and FIRE INSURANCE
COMPANY, LTD., third-party defendant.

Middlesex. September 7, 2004. - October 13, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Insurance,* Endorsement. *Contract,* Insurance, Indemnity. *Indemnity.*

This court concluded that, under a "vendor's broad form" insurance policy
endorsement, a manufacturer's insurer was required to indemnify a vendor
whose negligence in setting up a display of the manufacturer's product was
the sole cause of injuries to a customer. [678-682]

In a civil action by a vendor seeking indemnification for its own negligence
from a manufacturer's insurer, there was no merit to the claim that the
vendor had altered the display unit at issue when the vendor unpacked and
assembled the display unit, where assembly was required before the display
unit could be utilized; moreover, the judge's finding that the plaintiff's
injury was alleged to have been caused by the vendor's having created a
dangerous and unsafe condition for its customers was not incompatible
with the judge's conclusion that the injury was caused by the display unit,
because the dangerous and unsafe condition was the display unit itself.
[682]

CIVIL ACTION commenced in the Superior Court Department on
July 29, 1997.

The case was heard by *Nonnie S. Burnes,* J.

The Supreme Judicial Court granted an application for direct
appellate review.

*Michael F. Aylward* (*Richard W. Jensen* with him) for Sumi-
tomo Marine and Fire Insurance Company, Ltd.

*Alice Olsen Mann* (*Joan S. Amon* with her) for the plaintiffs.

*Owen Gallagher,* pro se, amicus curiae, submitted a brief.

IRELAND, J. This case raises an issue of first impression:

---

[1] By his parents and next friends Louis Makrigiannis and Lydia Makrigiannis.

[2] Louis Makrigiannis.

[3] Lechmere, Inc. Lechmere, Inc., has not appeared in this appeal.

676 442 Mass. 675 (2004)

Makrigiannis *v.* Nintendo of America, Inc.; Sumitomo Marine and Fire Insurance Company, Ltd.

whether, under a "vendor's broad form" insurance policy endorsement, a manufacturer's insurer is required to indemnify a vendor whose negligence in setting up a display of the manufacturer's product was the sole cause of injuries to a customer. We granted the plaintiffs' application for direct appellate review to consider whether a Superior Court judge erred where, after a bench trial, she held that the insurer must indemnify the vendor. Because we conclude that the vendor's endorsement at issue here covers claims for a vendor's own negligence when the manufacturer's product causes bodily injury, we affirm the judgment.

*Facts and Procedural Background.*

We present the relevant facts as found by the judge, supplementing them as necessary, and reserving certain details for our discussion of the issues. The relevant facts are not disputed.

KCS Industries, Inc., manufactured a large interactive Game Boy display unit[4] (unit) for Nintendo of America, Inc. (Nintendo), which sold the unit to Lechmere, Inc. (Lechmere), in August, 1993. The unit was shipped to Lechmere in three cartons, requiring Lechmere to assemble it in the store. At some point before August, 1994, Lechmere assembled the unit on the floor of its Cambridge store. On August 2, 1994, Tony Makrigiannis, who was then five years old, was injured on the premises of the Lechmere store when the unit fell on him.

In 1997, the plaintiffs filed suit against Nintendo and Team Marketing, Inc.,[5] alleging negligent installation, maintenance, and inspection, as well as negligent failure to provide adequate warnings for operators. The plaintiffs later amended their complaint to add Lechmere as a defendant, alleging negligent ownership, inspection, maintenance, or installation resulting in a dangerous and unsafe condition.

At the time of the 1994 accident, Nintendo had a policy of li-

---

[4]The unit was seventy-two inches high, thirty-six inches wide, and eighteen inches deep; weighed 218 pounds; and consisted of a display pedestal, a twenty-inch JVC television monitor, and a Game Boy interactive demovision display, which housed the software.

[5]Team Marketing, Inc., was dismissed from the case on the allowance of its motion for summary judgment.

442 Mass. 675 (2004) 677

Makrigiannis *v.* Nintendo of America, Inc.; Sumitomo Marine and Fire Insurance Company, Ltd.

ability insurance with Sumitomo Marine and Fire Insurance Company, Ltd. (Sumitomo). The policy included a vendor's broad form endorsement covering "[a]ll vendors authorized by the Named Insured," which included Lechmere. Pursuant to the vendor's endorsement, Lechmere demanded defense and indemnification from Sumitomo. Sumitomo refused on the basis that the endorsement did not extend coverage to Lechmere for the plaintiffs' claims. Lechmere then commenced a third-party action against Sumitomo seeking a judgment declaring that Sumitomo owed Lechmere a defense and indemnification under the vendor's endorsement.

On Sumitomo's motion, the trial judge bifurcated the tort and third-party actions for the purposes of trial. A jury heard the plaintiffs' claims against Nintendo and Lechmere in March, 2002. At the close of the plaintiffs' case, the judge directed a verdict in favor of Nintendo on the claims of negligent design and manufacture of the unit. The remaining claims went to the jury, which found that Lechmere was one hundred per cent negligent and that its negligence was the proximate cause of the minor plaintiff's injuries. After a bench trial of the third-party action, the judge ruled that Sumitomo owed Lechmere a defense and indemnification with respect to the underlying action because the plaintiffs' claims fell within the scope of the vendor's endorsement.

Sumitomo appealed, arguing that the judge erred in ordering it to indemnify Lechmere under the vendor's endorsement because Lechmere failed to establish that it was entitled to coverage under the policy.[6] Additionally, Sumitomo argues that the judge's findings of facts supporting her conclusion were clearly erroneous.[7]

*Discussion.*

1. *Standard of review.* We accept the judge's findings of fact in a bench trial unless they are clearly erroneous. *Kendall* v. *Selvaggio*, 413 Mass. 619, 620 (1992), and cases cited. "On the other hand, to ensure that the ultimate findings and conclusions

---

[6]During the course of the appeal, the duty to defend issue was settled between Sumitomo and Lechmere. Accordingly, it is not an issue in this appeal.

[7]We acknowledge the amicus brief submitted by Owen Gallagher.

are consistent with the law, we scrutinize without deference the legal standard which the judge applied to the facts. Thus, the 'clearly erroneous' standard of appellate review does not protect findings of fact or conclusions based on incorrect legal standards." (Citations omitted.) *Id.* at 621.

2. *Vendor's endorsement.* The relevant portions of Sumitomo's broad form insurance policy are as follows:

> "It is agreed that the 'Persons Insured' provision is amended to include any person or organization designated below (herein referred to as 'vendor') as an insured, but only with respect to the distribution or sale in the regular course of the vendor's business of the Named Insured's products designated below subject to the following additional provisions:

> "1. The insurance with respect to the vendor does not apply to:

> "...

> "(b) bodily injury or property damage arising out of

> "(i) any physical or chemical change in the form of the product intentionally made by the vendor,

> "...

> "(iii) demonstration, installation, servicing or repair operations, *except such operations performed at the vendor's premises* in connection with the sale of the product" (emphasis added).

Under the policy, Lechmere was the named vendor and Nintendo was the named insured. The insured products were listed as "Amusement machine including Home Video Games, coin-operated [*sic*] video games, playing cards and all other products which are manufactured, assembled &/or distributed by the Named Insured(s)."

The policy fails to define the terms "distribution" and "sale." "Distribution" can be defined as "the marketing or merchandising of commodities." Webster's Third New Int'l Dictionary 660 (1993). "Sale" can be defined as the "opportunity of selling or

being sold," and "sales" as "operations and activities involved in promoting and selling goods or services." *Id.* at 2003. The policy defines "products" as "goods or products manufactured, sold, handled or distributed by the Named Insured or by other trading under his name, including any container thereof." Thus, "product" appears to include those items used for marketing.

The record reveals that the unit was displayed in the Lechmere store to stimulate sales of Nintendo's Game Boy products. Sumitomo points to the fact that the unit itself was not for resale to the general public, but rather was solely for promotional purposes. This, however, is irrelevant, as Sumitomo admits the unit was for promotional purposes and thus part of the operations and activities involved in promoting and selling Nintendo's goods and services. Further, the minor plaintiff was injured when the top portion of the unit fell on top of him as he was attempting to use it. As such, the unit was a "product" under the terms of the endorsement and covered by the policy.[8]

If Sumitomo did not intend to cover display products, it could have excluded all "demonstrations" including those performed at the vendor's premises in connection with the sale of the product.[9] Although an exclusion cannot create coverage, the language of the exclusion reinforces our interpretation that products on display are covered under the vendor's endorsement.

Sumitomo relies heavily on the ruling in *Mitchell* v. *Stop &*

---

[8] A number of other jurisdictions have found coverage under the vendor's endorsement where customers are injured by display products. See Atlantic Mut. Cos. *vs.* Home Depot U.S.A., Inc., U.S. Dist. Ct. No. 02-2241-KHV, slip op. at 5-8 (D. Kan. Jan. 27, 2003) (vendor negligently failed to secure storm door display frame and customer was injured); *Home Depot, U.S.A., Inc.* v. *Federal Ins. Co.*, 241 F. Supp. 2d 702, 706-708 (E.D. Tex. 2003), aff'd by unpublished opinion, 85 Fed. Appx. 988 (5th Cir. 2004) (customer injured where rug display rack used for promotional purposes fell); *KMart Corp.* v. *Fireman's Fund Ins. Co.*, 88 F. Supp. 2d 767, 771-775 (E.D. Mich. 2000) (vendor negligently assembled patio furniture for floor display and customer was injured). But see *Hartford Acc. & Indem. Co.* v. *Bennett*, 651 So. 2d 806, 807-808 (Fla. Dist. Ct. App. 1995) (coverage denied because demonstration model, which was full size replica of storage unit, was not for sale in normal course of business and, thus, did not constitute product).

[9] The limited exclusion in the policy in this case does not preclude coverage because the exclusion for demonstration operations excepts "such operations performed at the vendor's premises in connection with the sale of the product," and the unit was displayed to stimulate sales of Game Boy products at Lechmere.

*Shop Cos.*, 41 Mass. App. Ct. 521 (1996), and cases from other jurisdictions to argue that a vendor's endorsement does not indemnify a vendor for independent acts of negligence because the purpose of the policy is to protect a vendor in products liability suits. However, Sumitomo's reliance on the *Mitchell* case is misplaced. Unlike in the present case, where the minor plaintiff was injured by Nintendo's product, in the *Mitchell* case there was no connection between the products (bakery goods) and the plaintiff's injuries. *Id.* at 524. There, a bakery employee was injured on a supermarket's loading dock while delivering bread to the supermarket. *Id.* at 521. As to one reason that the vendor's endorsement did not apply, the Appeals Court stated:

> "Although Mitchell was injured in the course of delivering a Continental product to Stop & Shop, his injuries cannot be said to have been caused by the product or to have arisen in 'the distribution or sale in the regular course of the vendor's [i.e. Stop & Shop's] business of Continental Baking Companies' products . . . .' Rather, they arose from the distribution in the regular course of Continental's business of its products to a vendor."

*Id.* at 524. In this case, regardless of Lechmere's negligence, the minor plaintiff's injuries were caused by Nintendo's product — it was Nintendo's product that fell on him.

As for the out-of-State cases on which Sumitomo relies, some are not persuasive as applied to the facts of this case. See *Dominick's Finer Foods, Inc.* v. *American Mfrs. Mut. Ins. Co.*, 163 Ill. App. 3d 149, 150-152 (1987) (denying coverage where bottling company employee was injured when he slipped and fell on loading dock while delivering bottling company products to restaurant; facts nearly identical to those in *Mitchell* v. *Stop & Shop Cos., supra*); *American White Cross Labs., Inc.* v. *Continental Ins. Co.*, 202 N.J. Super. 372, 378-381 (1985) (denying coverage under vendor's endorsement because of specific exclusion precluding coverage where products were labeled or relabeled by vendor). In fact, in other, subsequent cases, the same courts found coverage under a vendor's endorsement where there was a nexus between the named insured's product and the injury. See *Sportmart, Inc.* v. *Daisy Mfg. Co.*, 268 Ill.

App. 3d 974, 976-978 (1994) (coverage provided where vendor negligently sold named insured's BB pellets to minor, who sustained eye injury when he shot pellets from BB gun); *Pep Boys* v. *Cigna Indem. Ins. Co.*, 300 N.J. Super. 245, 249-255 (1997) (coverage provided where vendor negligently sold named insured's freon to minor, who died after inhaling it).[10] Additionally, the *Pep Boys* court noted that its "extensive analysis in the *American* opinion of the role of the endorsement was dictum [as t]he only issue was whether the exclusions applied." *Pep Boys* v. *Cigna Indem. Ins. Co., supra* at 255.

The endorsement does not limit coverage to claims of product defects. Nor does it exclude coverage when injury results from a vendor's negligence. Had Sumitomo intended to exclude coverage whenever a claim arose solely out of a vendor's negligence, it could have expressly stated such an exclusion. See *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.*, 415 Mass 844, 848-849 (1993), and cases cited. We also reject Sumitomo's argument that product manufacturers have no reason to insure vendors for anything other than actual product defects. To the contrary, product manufacturers have sound reason for insuring the vendor for the vendor's own negligence as well as for actual product defects, as such broad coverage removes any incentive for the vendor to "point the finger" at the manufacturer when claims arise.

Even assuming that the endorsement is susceptible to Sumitomo's interpretation, "where 'there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it.' " *Id.* at 849, quoting *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). In construing this endorsement, it is also appropri-

---

[10]Although the courts in both cases focused on the language of the endorsement, namely that an insured includes vendors "but only with respect to 'bodily injury' or 'property damage' *arising out of* [the named insured's] products . . . which are distributed or sold in the regular course of the vendor's business" (emphasis supplied), see *Sportmart, Inc.* v. *Daisy Mfg. Co.*, 268 Ill. App. 3d 974, 977 (1994); *Pep Boys* v. *Cigna Indem. Ins. Co.*, 300 N.J. Super. 245, 248 (1997), we do not find the lack of the "arising out of" language in this case to be decisive. Without determining whether the "but only with respect to" language is as broad as "arising out of," we conclude that whatever "with respect to" means, it certainly includes demonstrations of the named insured's product on the vendor's premises.

ate "to consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). We conclude that a reasonable vendor, reading this endorsement's language, would expect coverage in these circumstances.

3. *Judge's findings.* Sumitomo argues that the judge made a series of erroneous findings to support her conclusion that the minor plaintiff was injured by the unit itself and that Lechmere had not altered it. Pointing to the judge's finding that "[i]n this case, there are no allegations that Lechmere altered the [unit] in any way whatsoever," Sumitomo argues that the record unequivocally establishes that Lechmere altered the unit when Lechmere unpacked and assembled it in the store. This argument is without merit, as Sumitomo's own witness admitted that assembly was required before the unit could be utilized. Moreover, a finding that mere assembly of a product amounts to "alteration" of that product would preclude coverage even if the vendor was not negligent and there was a product defect.

Next, Sumitomo argues that the judge's original finding that "the plaintiff's injury is not alleged to have been caused by a dangerous condition in the store" is not supported by the record. On Sumitomo's motion, the judge revised her finding to state that "the plaintiff's injury is alleged to have been caused by Lechmere's creating a dangerous and unsafe condition for customers in the Lechmere store." Contrary to Sumitomo's argument, the revised finding can still support the judge's conclusion that "the injury was caused by the [unit] itself." Even assuming the jury found that the plaintiff's injury was caused by Lechmere's creating a dangerous and unsafe condition,[11] the dangerous and unsafe condition was the unit itself.

*Conclusion.* For the reasons set forth above, we conclude that the vendor's endorsement at issue in this case covers the vendor's own negligence and that the manufacturer's insurer must indemnify the negligent vendor.

*Judgment affirmed.*

---

[11]This is unknown, as the jury merely stated that Lechmere was negligent but did not explain in what way it was negligent.