NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11791


JOSEPH P. BOYLE & another[1]  vs.  ZURICH AMERICAN INSURANCE
COMPANY.



Middlesex.     April 6, 2015. - September 14, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.



Insurance, Insurer's obligation to defend, Notice, Settlement of
     claim.  Notice, Insurance claim.  Consumer Protection Act,
     Insurance, Unfair or deceptive act.  Practice, Civil,
     Damages.




     Civil action commenced in the Superior Court Department on
June 27, 2011.

     The case was heard by Kenneth W. Salinger, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     John T. Harding (Rachel M. Davison with him) for the
defendant.
     Michael K. Gillis (David R. Bikofsky & Joseph I. Rogers
with him) for the plaintiff.
     The following submitted briefs for amici curiae:
     Laura Foggan, of the District of Columbia, & Rosanna
Sattler for Complex Insurance Claims Litigation Association.

_____

     [1] Janice M. Boyle.

Anthony R. Zelle & Robert J. Maselek, Jr., for Massachusetts Defense Lawyers Association.

Charlotte E. Glinka, Thomas R. Murphy, & J. Michael Conley for Massachusetts Academy of Trial Attorneys.

LENK, J. Joseph P. Boyle was injured by an exploding tire in an automobile repair shop operated by C&N Corporation (C&N). Joseph[2] and his wife, Janice M. Boyle, filed a complaint against C&N, asserting claims for bodily injury and loss of consortium. C&N held an insurance policy issued by Zurich American Insurance Company (Zurich). The policy required that C&N provide notice to Zurich of any suit brought against it. C&N informed Zurich about Joseph's injury. It did not notify Zurich about the lawsuit, but the Boyles' counsel eventually did. Zurich did not defend against the suit. C&N defaulted, and judgment by default was entered for the Boyles.

Subsequently, the Boyles brought suit against Zurich, asserting both their individual claims and the claims of C&N, which, in the interim, C&N had assigned to the Boyles. In return for a negotiated sum of money, the Boyles released the claims that they had asserted on their own behalf; these individual claims arose from Zurich's asserted failure to settle the Boyles' personal injury action when liability had become reasonably clear. After a jury-waived trial on C&N's claims

_____

[2] Because they share a last name, we refer to Joseph P. Boyle and Janice M. Boyle by their first names.

against Zurich, a Superior Court judge determined that Zurich had committed a breach of its contractual duty to defend C&N. The judge declined to award the Boyles (as C&N's assignees) multiple damages, costs, and attorney's fees pursuant to G. L. c. 93A. The judge also subtracted from the Boyles' damages (as assignees) the amount that Zurich had agreed to pay to settle the Boyles' individual claims. The parties filed cross appeals, and we granted Zurich's petition for direct appellate review.

We conclude that the judge did not err in his determination that Zurich committed a breach of its duty to defend C&N. In essence, as we have held in the line of cases proceeding from Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980) (Johnson Controls), an insured's failure to comply with a notice obligation in an insurance policy does not relieve the insurer of its duties under that policy unless the insurer demonstrates that it suffered prejudice as a result of the breach. Zurich has not shown such prejudice.

We do not disturb the judge's conclusion that Zurich did not violate G. L. c. 93A. We do, however, conclude that the sum agreed upon to settle the Boyles' individual claims should not

have been subtracted from the damages awarded to the Boyles as C&N's assignees.[3]

1. Background. We recite the essential facts found by the judge, which we accept "unless they are clearly erroneous," Weiler v. PortfolioScope, Inc., 469 Mass. 75, 81 (2014), quoting Makrigiannis v. Nintendo of Am., Inc., 442 Mass. 675, 677 (2004), and which the parties do not challenge, supplemented by other undisputed information from the record.

a. Underlying facts. C&N operated an automobile repair shop. In March, 2006, Nicholas Rago, one of C&N's co-owners, raised a customer's truck on a lift at C&N's shop. At Rago's request, Joseph stepped into the garage to listen to the truck's transmission. As Rago revved the engine, one of the truck's tires exploded, severely lacerating and fracturing Joseph's left forearm and hand.

Joseph underwent several surgical procedures, incurring approximately $106,000 in medical expenses. He suffered permanent scarring and partial loss of function in his left arm and hand. For approximately one year, Joseph was unable to work. Subsequently, he was compelled to seek less-skilled, lower-paying employment than he previously had held.

---

[3] We acknowledge the amicus briefs submitted by the Complex Insurance Claims Litigation Association, the Massachusetts Defense Lawyers Association, and the Massachusetts Academy of Trial Attorneys.

C&N carried a "business auto" insurance policy issued by Zurich, which included liability coverage. The coverage limit of that policy was $50,000. Rago reported Joseph's accident to his insurance agent, Tarpey Insurance Group (Tarpey), twelve days after the accident. Tarpey relayed written notice to Zurich, which opened a claim file and began an investigation.

In June, 2006, an investigator for Zurich interviewed Rago, who described the accident and reported that Joseph was undergoing surgeries. That same month, an attorney retained by the Boyles informed C&N by letter that the Boyles intended to assert a claim for bodily injury. This letter was forwarded by C&N to Tarpey, and by Tarpey to Zurich. In October, 2006, the Boyles' attorney wrote to Zurich directly, informing it of the Boyles' intention to pursue a bodily injury claim and asking for information about the coverage limits of C&N's policy. Another, similar letter, marked "2nd request," was delivered to Zurich in December, 2006. Although Zurich was required to provide the information sought by the Boyles, see G. L. c. 175, § 112C, it did not respond.

By October, 2007, Zurich had determined that C&N would be held liable for Joseph's injuries. By early 2008, it had concluded that Joseph's injuries were covered by C&N's policy. Zurich did not relay these determinations to C&N. It also did not attempt to estimate the liability that C&N might face, or to

settle the Boyles' claims.  Instead, in February, 2008, Zurich closed its file for the Boyles' claim.

b.  <u>Suit against C&N</u>.  In August, 2008, the Boyles brought an action in the Superior Court against C&N,[4] seeking damages for Joseph's injuries and for Janice's loss of consortium.  By that time, C&N no longer was operating as a business; it had been administratively dissolved for approximately fourteen months. C&N did not inform Tarpey or Zurich that the suit had been filed, and did not forward to Zurich the complaint or other documents filed in the proceedings.  C&N did not answer the complaint, and in January, 2009, C&N's default was entered.

The Boyles then moved for a judgment by default.  In September, 2009, the Boyles' attorney sent Zurich a letter stating that a hearing had been scheduled in the Superior Court to determine the amount of the Boyles' damages.  The letter specified the docket number assigned to the Boyles' complaint. Another letter, sent by the attorney later the same month, informed Zurich that the damages hearing had been postponed until October, 2009.  That letter also stated the amount of Joseph's medical expenses, and enclosed copies of his medical bills.  Upon receipt of these letters, a Zurich clerk scanned them and added them to the closed file for the Boyles'

---

[4] Nicholas Rago also was named as a defendant in that suit.

complaint. The clerk did not realize that any other action was necessary. Zurich therefore did not move to have C&N's default set aside; did not contact C&N to discuss the suit; and did not attempt to settle the suit with the Boyles, or otherwise to contact them or their attorney.

The October, 2009, hearing on the Boyles' damages was not attended by C&N or by Zurich. After the hearing, the judge awarded damages of $1.5 million to Joseph and $750,000 to Janice. The Boyles also were awarded pre- and postjudgment interest. Final judgment was entered against C&N in January, 2010.[5]

c. Suit against Zurich. In June, 2011, the Boyles commenced their current suit, also in the Superior Court, naming Zurich as the defendant. Among other things, the Boyles asserted that they were third-party beneficiaries of C&N's policy, and that Zurich had violated G. L. c. 93A by failing to settle the Boyles' suit against C&N. In September, 2013, C&N was revived by the Secretary of the Commonwealth for a period not to exceed one year. Upon being revived, C&N assigned to the Boyles all of its rights and claims against Zurich, including a claim that Zurich had committed a breach of its contractual duty

---

[5] The judgment was entered jointly and severally against C&N and Rago, who also had defaulted.

to defend C&N.[6] C&N's claims against Zurich, assigned to the Boyles, subsequently were consolidated with the Boyles' claims on their own behalf.

Several days before the case was scheduled to be tried, the Boyles and Zurich reached an agreement to settle the Boyles' individual claims. The Boyles signed a release relinquishing any claims they had "in their individual capacities." In return, they were to receive $1,324,357, a sum equal to the amount that had accrued in postjudgment interest on the default judgment that the Boyles had obtained against C&N. A release executed by the Boyles as part of the settlement stated that it "specifically excludes . . . the rights of the Boyles as assignees of [C&N] to pursue the full amount of the judgment entered in [the Boyles' suit against C&N], with interest."

A jury-waived trial was conducted on the remaining claims, namely, those that C&N had assigned to the Boyles. In detailed written findings, the Superior Court judge concluded that Zurich had committed a breach of its contractual duty to defend C&N. The judge determined that Zurich's duty to defend was triggered by the notice it had received of Joseph's injury (from C&N),

---

[6] It is permissible and not uncommon for an insured to assign his or her rights against an insurer to the injured party. See Ratner v. Canadian Universal Ins. Co., 359 Mass. 375, 379 (1971); Gore v. Arbella Mut. Ins. Co., 77 Mass. App. Ct. 518, 526 (2010).

coupled with its notice of the impending damages hearing (received from the Boyles' attorney). Based primarily on the testimony of a Zurich employee, the judge found that any reasonable insurer would have attempted, by the time of the damages hearing, to settle the Boyles' claim for the policy limit of $50,000. The judge credited the testimony of the Boyles and their attorney that if, at that time, Zurich had offered to settle for the policy limit, such an offer would have been accepted, and no default judgment against C&N would have been pursued.

Accordingly, the judge concluded that Zurich's failure to defend C&N caused C&N damages in the full amount of the judgment rendered against it, namely, $2,250,000, plus interest. The judge did not, however, award the Boyles (as assignees) multiple damages, finding no violation of G. L. c. 93A. At the end of his order, the judge wrote that "the $1,324,357 in post-judgment interest that [Zurich] has already agreed to pay to the Boyles in order to settle their direct claims" would be subtracted from the award of damages. Both parties appealed.

2. Discussion. Before us, Zurich contends that its duty to defend C&N was not triggered at any time, given that C&N itself never informed Zurich of the Boyles' lawsuit, never forwarded the complaint and related documents to Zurich, and never requested that Zurich provide a defense. The Boyles, for

their part, challenge the judge's determinations that Zurich committed no violation of G. L. c. 93A, and that the Boyles' damages should be reduced by the amount that Zurich had agreed to pay in order to settle the Boyles' individual claims. Examining these arguments "without deference [to] the legal standard which the judge applied," Makrigiannis v. Nintendo of Am., Inc., 442 Mass. 675, 678 (2004), quoting Kendall v. Selvaggio, 413 Mass. 619, 621 (1992), we conclude that only the Boyles' challenge to the subtraction of the settlement payment from their damages award is meritorious.

a. Duty to defend. "It is well settled in this jurisdiction that a liability insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity." Doe v. Liberty Mut. Ins. Co., 423 Mass. 366, 368 (1996), citing Liberty Mut. Ins. Co. v. SCA Servs., Inc., 412 Mass. 330, 332 (1992). A breach of the duty to defend can support claims in contract, in tort, and under G. L. c. 93A. See Hartford Cas. Ins. Co. v. New Hampshire Ins. Co., 417 Mass. 115, 118, 120 (1994). Closely tied to the duty to defend is an insurer's obligation "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Id. at 120, quoting G. L. c. 176D, § 3 (9) (f).

The duty to defend also was incorporated explicitly into the policy that Zurich issued to C&N, by way of a mandatory

indorsement approved by the Commonwealth's Division of Insurance.  Zurich argues, however, that it was not subject to any duty to defend C&N because of other terms in C&N's policy. That policy, which (according to the parties) is in widespread use in Massachusetts, stated that Zurich would "ha[ve] no duty to provide coverage . . . unless there has been full compliance" with specified obligations, including the obligation to "[i]mmediately send [Zurich] copies of any request, demand, order, notice, summons[,] or legal paper received concerning [a] claim or 'suit.'"  In Zurich's view, C&N's failure to forward the Boyles' complaint and related documents to Zurich relieved Zurich of its duty to defend.

The approach advocated by Zurich long has been rejected in Massachusetts, both by way of legislation and in our jurisprudence.  The Legislature, in 1977, amended G. L. c. 175, § 112, to provide that "[a]n insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit . . . unless the insurance company has been prejudiced thereby."  See St. 1977, c. 437.[7]  This provision applies to motor vehicle insurance

---

[7] Zurich argues that it never "den[ied] insurance coverage" to C&N Corporation (C&N).  We reject the suggestion, implicit in this argument, that an insurer may avoid the consequences of an

policies, like the one issued to C&N, and to other policies insuring against liability due to bodily injury, death, or property damage.

Our decision in Johnson Controls, supra, extended the same treatment to other liability insurance policies.[8]  The insured in that case, an attorney, failed to provide his malpractice insurance carrier with written notification of a claim against him, and failed also "to forward suit papers" to the insurer, all "in violation of the provisions of his insurance contract." 381 Mass. at 279.[9]  We held that, in subsequent cases, an insurance company seeking to be "relieved of its obligations under a liability insurance policy . . . on the ground of untimely notice . . . will be required to prove both that the

---

otherwise wrongful denial of coverage by ignoring a claim altogether.

[8] The approach to notice obligations prescribed by Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 279 n.2 (1980) (Johnson Controls), and its progeny concerns "occurrence"-based liability insurance policies like the one at issue in this case. Different considerations apply to "claims-made" policies.  See Chas. T. Main, Inc. v. Fireman's Fund Ins. Co., 406 Mass. 862, 863-864 (1990).

[9] Because the insured in Johnson Controls never provided notice of the claim against him, Zurich is incorrect in suggesting that the analysis adopted in that case is restricted to instances in which the insured did eventually, if belatedly, provide notice of the suit against it.  See Darcy v. Hartford Ins. Co., 407 Mass. 481, 482-483 (1990).  See also Couch on Insurance § 200:33, at 200-48 (3d ed. 2005) (prejudice requirement applies to "failure of the insured to give notice").

notice provision was in fact breached and that the breach resulted in prejudice to its position."  Id. at 282.

Our reasoning in Johnson Controls, as we later paraphrased it, was that "[a] violation of a policy provision should bar coverage only where the breach frustrates the purpose underlying that provision."  Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 123 (1991).  Notice requirements are intended to permit the insurer to undertake a "seasonable investigation of the facts relating to liability," see Johnson Controls, 381 Mass. at 281, quoting Bayer & Mingolla Constr. Co. v. Deschenes, 348 Mass. 594, 600 (1965), so that it may preserve "an opportunity to defend effectively."  See Johnson Controls, supra, quoting Brakeman v. Potomac Ins. Co., 472 Pa. 66, 75 (1977).  These purposes are undermined by an insured's breach only if the insurer is prejudiced thereby.  See Johnson Controls, supra at 281.  The contrary approach, which treats a notice provision as a condition precedent to the insurer's obligations, results in "a forfeiture, for the carrier seeks . . . to deny the insured the very thing paid for."  Id. at 281, quoting Cooper v. Government Employees Ins. Co., 51 N.J. 86, 93-94 (1968).  We noted also in Johnson Controls, supra at 281, quoting Brakeman, supra at 72, that the traditional notion that courts should not "redraft" policy provisions "fails to recognize the true nature of the relationship between insurance

companies and their insureds," insofar as "[a]n insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured."[10]

We reaffirmed and fortified the rule of Johnson Controls in Darcy v. Hartford Ins. Co., 407 Mass. 481 (1990) (Darcy). There, too, the insured, a corporation, did not notify the insurer about the lawsuit brought against it. The insurer learned of the suit when it was impleaded as a third party into another action arising from the same underlying accident. See id. at 482-483. The insurer refused to defend its insured because, among other things, the insured had not provided it with notice of the suit. Id. at 484. The injured parties later obtained a judgment against the insurer. Id. On appeal, we declined to adopt "a rebuttable presumption of prejudice in cases where the delay in notifying an insurer of a claim or possible claim is 'extreme.'" Id. at 485. We explained that an insurer should not be permitted "to avoid liability on the basis of the possibility, rather than on proof of actual prejudice."

---

[10] This is thus a context in which both we and the Legislature have declined to embrace the customary canon -- on which Zurich leans heavily in its brief -- that "[a] policy of insurance whose provisions are plainly and definitely expressed . . . must be enforced in accordance with its terms." Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982), quoting Hyfer v. Metropolitan Life Ins. Co., 318 Mass. 175, 179 (1945).

Id. at 486. Rather, the insurer must bear "the burden of identifying the precise manner in which its interests have suffered," id. at 487, for instance by showing that the insured's breach of a notice requirement resulted in "the loss of critical evidence[] or testimony from material witnesses[,] despite diligent good faith efforts on the part of the insurer to locate them." Id. at 486.

Both Johnson Controls, 381 Mass. at 278, and Darcy, 407 Mass. at 483, arose from complaints brought by injured parties on their own behalf, seeking to reach and apply the proceeds of the insureds' policies. In Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295 (1994) (Sarnafil), we applied the same approach to an insured's complaint for breach of the duty to defend. The insured in Sarnafil, like C&N, informed the insurer about the potential for a claim, but -- in violation of the terms of the policy -- provided no notice about the initiation of legal proceedings. See id. at 298-301. This court concluded that the insured's violation of the notice provision would bar coverage only if the breach frustrated the provision's purpose. See id. at 302, 305-306, citing Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. at 122-123, and Darcy, 407 Mass. at 491. The court rejected the view, advocated by a dissent, that the purpose of the notice requirement was frustrated "as a matter of law" by the insured's failure to "tender[] its defense to [the

insurer]," id. at 313 (O'Connor, J., dissenting in part), and that "[b]ecause there was no notice, there was no duty [to defend]." Id. at 315 (O'Connor, J., dissenting in part). Instead, the court held that the insurer would not be excused of its obligations without a showing of prejudice. See Sarnafil, supra at 305-306.[11]

We have not seen cause to revise our holdings in Johnson Control and its progeny. See, e.g., Mello v. Hingham Mut. Fire Ins. Co., 421 Mass. 333, 336-337 (1995); Goodman v. American Cas. Co., 419 Mass. 138, 141 (1994). See also Pilgrim Ins. Co. v. Molard, 73 Mass. App. Ct. 326, 336-337 (2008). The reasoning of those decisions, described earlier, remains compelling today.[12] Indeed, similar rules have been adopted by a large majority of other States. See, e.g., Prince George's County v. Local Gov't Ins. Trust, 388 Md. 162, 182-188 (2005), and cases

---

[11] Under this analytical framework, the court concluded that a genuine dispute remained as to whether the insurer had suffered prejudice, precluding summary judgment. See Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 302, 305-306 (1994).

[12] Two of the amici suggest that a rule permitting an insured to obtain coverage after failing to comply with a notice provision opens the door to manipulations by insureds, who may seek to "undermine the defense" and to "thwart the insurer's ability to mount an effective, timely defense." But circumstances in which the defense would be injured in these ways are precisely those in which the prejudice requirement of Johnson Controls, 381 Mass. at 282, would be satisfied.

cited; Couch on Insurance § 199:135, at 199-187 to 199-189 (3d ed. 2005).[13]

Accordingly, C&N's failure to notify Zurich of the complaint brought by the Boyles did not, standing alone, excuse Zurich of its duty to defend C&N.  Instead, upon learning from the Boyles' attorney that a lawsuit was pending against C&N for an occurrence covered by the policy, Zurich was required to defend against that suit unless C&N's breach of its notice obligation prejudiced Zurich, by depriving it of an opportunity to mount an effective defense.

The judge determined that Zurich did not establish that it had been prejudiced in this way.  Although Zurich made no argument to the contrary in the Superior Court, it challenges this determination in a footnote to its appellate brief.  Even

---

[13] Zurich American Insurance Company (Zurich) cites decisions from several other jurisdictions for the proposition that the duty to defend is not triggered unless the insured affirmatively requests that a defense be provided.  See, e.g., Purvis v. Hartford Acc. & Indem. Co., 179 Ariz. 254, 258 (Ct. App. 1994); First Bank of Turley v. Fidelity & Deposit Ins. Co. of Maryland, 928 P.2d 298, 304 (Okla. 1996).  Other courts do not impose this condition.  See, e.g., Cincinnati Cos. v. West Am. Ins. Co., 183 Ill. 2d 317, 326 (1998); Garcia v. Underwriters at Lloyd's, London, 143 N.M. 732, 738 (2008).  See generally Couch on Insurance § 200:32, at 200-47 to 200-48.  As we have indicated in Johnson Controls, supra at 282, and Darcy v. Hartford Ins. Co., 407 Mass. 481, 482-483 (1990), we subscribe to the latter school of thought.  See note 9, supra.

if the issue had been properly preserved and presented,[14] Zurich's position would be belied by the judge's unchallenged findings of fact. When Zurich learned of the Boyles' lawsuit, the hearing to assess the Boyles' damages had not yet taken place. At that juncture, Zurich could have contacted C&N and arranged to enter an appearance on its behalf. Zurich could have requested a postponement of the damages hearing. It could have moved to have C&N's default set aside, pursuant to Mass. R. Civ. P. 55 (c), 365 Mass. 822 (1974). Even after a judgment had entered, Zurich could have moved to set the judgment aside, pursuant to rule 55 (c) and Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974). Most importantly, Zurich still could have resolved the Boyles' claim by offering to pay the policy limit of $50,000, an offer that, the judge found, the Boyles would have accepted. On these facts, the judge's conclusion that Zurich failed to present "proof of actual prejudice," Darcy, 407 Mass. at 486, was well-founded.

b. Consequences of the duty to defend. Zurich presents no other challenge to the judge's analysis. In conjunction with its duty to defend, Zurich was obliged to make reasonable,

---

[14] See Canton v. Commissioner of Mass. Highway Dep't, 455 Mass. 783, 795 n.18 (2010) (argument waived where it was not made in trial court); Mole v. University of Mass., 442 Mass. 582, 603 n.18 (2004) (sentence in footnote did not amount to argument).

prudent efforts to settle the Boyles' suit.  See Medical

Malpractice Joint Underwriting Ass'n of Mass. v. Goldberg, 425

Mass. 46, 60 n.33 (1997); Hartford Cas. Ins. Co. v. New

Hampshire Ins. Co., 417 Mass. 115, 119-120 (1994).  Zurich

committed a breach of that duty by failing to settle the suit

for the policy limit, an endeavor that, the judge found, any

reasonable insurer would have undertaken.

The judge calculated the Boyles' total amount of damages by

using the method we endorsed in DiMarzo v. American Mut. Ins.

Co., 389 Mass. 85 (1983) (DiMarzo).  In that case, too, an

insurer failed to settle an injured plaintiff's tort claim

against an insured for the policy limit, there $20,000.[15]  See

_____

[15] Whereas Zurich failed to make any effort to settle the
Boyles' suit, the insurer in DiMarzo v. American Mut. Ins. Co.,
389 Mass. 85, 89 (1983), offered the injured plaintiff less than
the policy limit.  This distinction does not affect the manner
in which an insured's damages are calculated.  See note 7,
supra.  Nor is the judge's method of calculating damages
rendered incorrect by the fact that DiMarzo v. American Mut.
Ins. Co., supra at 87, concerned a claim under G. L. c. 93A,
whereas the judge found Zurich liable on a breach of contract
theory.  Breach of the contractual duty to defend entitles the
insured "to contract damages caused by the breach."
Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352,
359 (2011), citing Polaroid Corp. v. Travelers Indem. Co., 414
Mass. 747, 763 (1993).  "Contract damages are 'those that cannot
be reasonably prevented and arise naturally from the breach, or
which are reasonably contemplated by the parties.'"  Polaroid
Corp. v. Travelers Indem. Co., supra at 762, quoting Delano
Growers' Coop. Winery v. Supreme Wine Co., 393 Mass. 666, 680
(1985).  Where breach of the duty to defend results in a
judgment against the insured that otherwise would not have
occurred, the amount of that judgment may be deemed damages

id. at 89, 100-101.  The plaintiff's tort case went to trial, and resulted in a judgment against the insured for approximately $149,068.  See id. at 89.  There, as here, the plaintiff obtained an assignment of the insured's rights against the insurer.  See id. at 93-94.  We upheld a subsequent award of damages against the insurer for the full amount of the tort judgment, explaining that "[i]f [the insurer] had offered $20,000, [the insured] would have been released from the judgment against him."  Id. at 101.  See also Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 360 (2011) (insurer committing breach of duty to defend may incur "obligation to pay the default judgment"); Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 764 (1993) (Polaroid) ("an insured's losses in the underlying claim could well be the result of a breach of the duty to defend").  The amount of damages was not affected, we explained, by the question whether the insured was (like C&N) insolvent; as we had reasoned in an earlier case, "if solvency is required in order to sue for damages, an insurer is likely to be less responsive to its duty to act in good faith toward an insured who cannot pay the judgment."  Jenkins v. General Acc. Fire & Life Assur. Corp., 349 Mass. 699, 702 (1965).  See

arising naturally from the breach.  See Metropolitan Prop. & Cas. Ins. Co. v. Morrison, supra at 359-360; Polaroid Corp. v. Travelers Indem. Co., supra at 762, 764.

DiMarzo, supra at 95 n.9.  See also D.J. Wall, Litigation and Prevention of Insurer Bad Faith § 5:19, at 231 (2d ed. 1994) ("rule . . . almost unanimously followed . . . holds that the contents of the insured's wallet are irrelevant to accrual of the insured's cause of action").

We are not asked to revisit our DiMarzo decision, and we do not now see cause to do so.  Applied here, the analysis of that decision yields the result reached by the judge, namely, that Zurich is liable to C&N for the amount of the judgment by default entered in the suit that Zurich failed to defend.

c.  General Laws c. 93A.  In their cross appeal, the Boyles challenge the judge's decision that Zurich did not violate G. L. c. 93A and that the Boyles are not entitled to multiple damages. We discern no reversible error.

The judge determined that Zurich committed a breach of both its contractual duty to defend C&N and the statutory obligation "to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."  G. L. c. 176D, § 3 (9) (f).  A violation of G. L. c. 176D, § 3 (9), itself establishes a violation of G. L. c. 93A unless the injured party is "engage[d] in the conduct of any trade or commerce."  See G. L. c. 93A, §§ 9 (1), 11.  The judge found, in accordance with the parties' agreed statement of facts, that C&N was indeed engaged in trade or commerce.  Consequently, the Boyles (as

C&N's assignees) are entitled to relief under G. L. c. 93A only upon a showing that Zurich engaged in "[u]nfair or deceptive acts or practices."  See G. L. c. 93A, § 2.  An award of "up to three, but not less than two, times" C&N's actual damages is warranted if such unfair or deceptive acts or practices were "willful or knowing."  G. L. c. 93A, § 11.  See Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 830 (2014); Polaroid, supra at 754.

The Boyles contend that Zurich engaged in unfair or deceptive acts by failing to defend C&N against the Boyles' suit; and, much later, by failing to settle the suit brought by the Boyles as C&N's assignees.  The judge found that neither episode amounted to an unfair or deceptive act.  "[W]hether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact," which we review for clear error.  See Klairmont v. Gainsboro Restaurant, Inc., 465 Mass. 165, 171 (2013), quoting Casavant v. Norwegian Cruise Line Ltd., 460 Mass. 500, 503 (2011).

Zurich's failure to defend C&N against the Boyles' suit was, the judge found, "inadvertent" and "negligent."  It stemmed largely from the unfortunate decision of a Zurich clerk to take no action upon receiving the letters informing Zurich of the Boyles' damages hearing.  Mere negligence ordinarily does not

represent an unfair or deceptive act.  See Darviris v. Petros, 442 Mass. 274, 278, 279 n.2 (2004), and cases cited.

Zurich made an error of a different nature in failing, more recently, to settle the Boyles' lawsuit as C&N's assignees.  By the eve of the trial against it, Zurich apparently was not averse to settlement, having agreed to resolve the Boyles' individual claims for a sum of $1,324,357.  The final offer made by Zurich to settle the Boyles' claims as C&N's assignees was the policy limit of $50,000, plus interest.  The judge found that "Zurich did not make this offer in bad faith or based on any ulterior motive," but rather, "did so based on its reading of its insurance policy."  The judge stated also, quoting Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 15 (1989), that the position taken by Zurich was "a plausible, although ultimately incorrect, interpretation of [the] policy."

In view of our long-standing jurisprudence, described supra, we do not share the view that Zurich's position was "plausible."  Even so, the judge's finding that Zurich's conduct was neither "unfair" nor "deceptive" was not clearly erroneous. "While G. L. c. 93A is a statute of 'broad impact,' the limits of which are not precisely defined, a violation of G. L. c. 93A requires, at the very least, more than a finding of mere negligence."  Darviris v. Petros, 442 Mass. at 278, quoting

Greenfield Country Estates Tenants Ass'n v. Deep, 423 Mass. 81, 88 (1996), and citing Mechanics Nat'l Bank v. Killeen, 377 Mass. 100, 109 (1979). The judge found, in essence, that although Zurich blundered badly in its reading of the legal landscape, its unsuccessful efforts to settle the Boyles' claims as C&N's assignees represented a negligent miscalculation, rather than "conduct involving dishonesty, fraud, deceit or misrepresentation." Darviris v. Petros, supra, quoting Poly v. Moylan, 423 Mass. 141, 151 (1996), cert. denied, 519 U.S. 1114 (1997). Similarly, the judge's finding that Zurich's settlement efforts, while misguided, were made in good faith, entails the conclusion that Zurich's conduct was not "willful or knowing" in the sense necessary to warrant an award of multiple damages. See Cruz Mgt. Co. v. Thomas, 417 Mass. 782, 791 (1994); VMark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610, 623 (1994). Nothing in the record compels conclusions to the contrary.

d. Deduction of settlement payment. As noted, the judge reduced the damages awarded to the Boyles as C&N's assignees by $1,324,357, the amount for which the Boyles had settled their individual claims against Zurich. We agree with the Boyles that this was error.

The judge's concern was evidently that the Boyles not recover twice for the same injury. See Selmark Assocs., Inc. v. Ehrlich, 467 Mass. 525, 544 (2014), citing Blake v. Commissioner

of Correction, 403 Mass. 764, 767 (1989) ("double recovery for same injury or loss is impermissible"). This concern appeared to the judge warranted since, at Zurich's urging, the judge characterized the payment of $1,324,357 as "post-judgment interest that [Zurich] has already agreed to pay."[16] But the parties' own agreement concerning their settlement, in the form of the written release signed by the Boyles (the validity of which is not contested), dispels the notion that the payment agreed upon overlaps with any subsequent award granted to the Boyles as C&N's assignees.

According to that release, the settlement payment was granted to the Boyles specifically in conjunction with the "claims, demands, causes of action . . . which the Boyles have or could have brought directly and in their individual capacities." The crux of the Boyles' individual claims was that Zurich had wronged them as third-party beneficiaries of C&N's policy, by failing to settle the Boyles' suit when liability had become reasonably clear. This wrong, which had the potential to result in multiple damages, attorney's fees, and costs (even if C&N's claim under G. L. c. 93A proved unsuccessful), is

---

[16] The suggestion that the payment should be so characterized was based on the fact that, according to the parties' joint statement of facts, the amount of postjudgment interest that had accrued as of May, 2014, on the judgment by default against C&N also was $1,324,357.

analytically independent of the wrong that supported C&N's claim against Zurich (assigned to the Boyles) -- i.e., that Zurich did not provide C&N with a defense. The release made in connection with the settlement of the Boyles' individual claims against Zurich acknowledged as much, stating that it "specifically excludes . . . the rights of the Boyles as assignees of [C&N] to pursue the full amount of the judgment entered in [the Boyles' suit against C&N], with interest" (second emphasis added).

In short, the parties made clear that the payment settling the Boyles' individual claims against Zurich would not come at the expense of any portion of Zurich's liability toward C&N, including (as stated explicitly) interest. The judgment should not have been reduced, therefore, by the amount of the settlement payment.

3. Conclusion. The result of our analysis is that Zurich's failure to defend on a $50,000 policy will culminate in an award of damages that is, "in the circumstances, extraordinarily large." See DiMarzo, 389 Mass. at 108 (Hennessey, C.J., concurring). This result flows from findings of fact "warranted on the evidence," with "[t]he law, step by step, . . . correctly applied." Id. "The crucial principles are . . . established . . . by construction of . . . statute[s], or by common law, in prior cases." Id. Those "crucial principles" are intended, in part, to ensure that an insurer

remains "responsive to its duty to act in good faith toward an insured."  Jenkins v. General Acc. Fire & Life Assur. Corp., 349 Mass. 699, 702 (1965).  We are presented with no reason to abandon those principles.

The judgment is vacated and set aside, and the matter is remanded to the Superior Court for entry of a modified judgment consistent with this opinion.

So ordered.