# United States Court of Appeals
## For the First Circuit

No. 23-1792

JOAN STORMO, as assignee of Peter T. Clark,

Plaintiff, Appellant,

v.

STATE NATIONAL INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Kayatta, Circuit Judges.

Zaheer A. Samee, with whom Frisoli & Associates was on brief, for appellant.
Sean P. Mahoney, with whom Joanna L. Young, Erica Sanders, and Kennedys CMK LLP were on brief, for appellee.

September 19, 2024

**KAYATTA, Circuit Judge.** Joan Stormo and her siblings hired attorney Peter Clark to represent them in a real estate transaction. Clark scuttled the deal, and Stormo sued him for malpractice. But Clark's professional-liability insurer, State National Insurance Company ("State National"), disclaimed coverage, contending that the claim fell under a so-called prior-knowledge exclusion contained in Clark's policy. State National also reserved the right to later deny coverage based on Clark's fourteen-month delay in reporting the lawsuit.

Stormo prevailed in her lawsuit against Clark and was assigned his claims against State National. She then sued State National, arguing that the insurance company had breached its contractual obligations to indemnify Clark and, in so doing, violated Massachusetts law prohibiting unfair claim-settlement practices. For the reasons that follow, we affirm the district court's judgments in favor of State National.

**I.**

Twenty years ago, Stormo and her siblings hired Clark to represent them in a planned real estate sale. By the time they engaged Clark, the siblings had signed a purchase-and-sale agreement to sell land to real estate developer KGM Custom Homes ("KGM"). Clark derailed the sale. He incorrectly believed that a liquidated damages provision in the contract gave his clients "a right to rescind the contract on payment of KGM's development

- 2 -

costs." See K.G.M. Custom Homes, Inc. v. Prosky, No. BRCV200401414, 2010 WL 11534424 (Mass. Super. Ct. Mar. 25, 2010). So as KGM finalized the approval process for its development plan, Clark informed the company that "his clients had another offer to purchase their property at a substantially higher price" and that the Stormo siblings "did not intend to sell the property to KGM." Id. He also behaved bizarrely at the closing, where the deal fell through.

Despite Clark's representations to the contrary, the Stormo siblings did intend to sell the property to KGM and did not have a higher offer on the property. Id. The family was reportedly stunned by the failure of the closing and Clark's conduct leading up to it. Id. Clark's actions kicked off no fewer than four lawsuits, the last of which is the subject of this appeal.

**A.**

First, in December 2004, KGM sued the Stormo siblings, alleging that they had wrongfully repudiated the purchase-and-sale agreement by refusing to close the sale. See id.[1] At the trial, the Stormo siblings testified that they had no other offer, and they did not know why Clark had represented that they did. The trial court sided with KGM on its claims, adding that

---

[1] For consistency, we will refer to this litigation as "KGM v. Stormo."

- 3 -

Clark's actions in his representation of the siblings "constituted a breach of both the implied covenant of good faith and fair dealing and the express covenant to sell the land." Id. KGM won compensatory damages. K.G.M. Custom Homes, Inc. v. Prosky, 10 N.E.3d 117, 120 (Mass. 2014).

Second, KGM sued Clark in December 2010 in Massachusetts Superior Court.[2] In its complaint, KGM alleged that Clark engaged in unfair and deceptive practices by making representations that caused the transaction with the Stormo siblings to fail. State National agreed to defend him in the action under his professional-liability policy. It retained a lawyer to represent Clark and settled the claim on his behalf. In total, State National paid $694,801.40 to defend and indemnify Clark in KGM's action against him.

Third, in October 2014, the Stormo siblings sued Clark in Massachusetts Superior Court for malpractice and several related claims arising out of Clark's representation of them in the failed KGM sale. See Stormo v. Clark, No. BRCV201401015, 2017 WL 9939783 (Mass. Super. Ct. Aug. 7, 2017). The complaint alleged that Clark had "actively worked to prevent the closing of the sale" through his fabrication of a higher offer, his misrepresentation of the Stormos' intentions, and his behavior

---

[2] We will refer to this settled lawsuit as "KGM v. Clark."

- 4 -

at the closing. Complaint and Jury Demand ¶¶ 13-18, Stormo, 2017 WL 9939783 (No. BRCV201401015). It also described the KGM v. Stormo lawsuit and alleged that Clark had "misadvised the plaintiffs by telling them that interest on KGM's damages would not begin to accrue until after exhaustion of all appeals and entry of final judgment in [that] litigation."[3] Id. ¶¶ 22, 26, 28.

Clark did not notify State National of the Stormos' claim against him until December 2015 -- over a year after they filed their complaint. Once the insurance company learned of the action, it retained attorney Peter Hermes to advise it about its potential coverage obligations given Clark's late notice, and because the new action appeared related to the KGM v. Stormo complaint. Based on Hermes's advice, State National disclaimed any coverage for Stormo v. Clark, citing the policy's prior-knowledge exclusion. Given the KGM v. Stormo action -- particularly the Stormo siblings' testimony about Clark's conduct leading up to the failed transaction -- State National contended that "Clark knew or could have reasonably foreseen before [the effective date of the policy] that his conduct might be expected to be the basis of a claim." The company likewise

_____

[3] According to emails provided by Stormo, Clark no longer believed this by July 2010. At that point, he sent emails suggesting interest would have begun to accrue when the Stormo siblings breached the agreement.

reserved the right to later disclaim coverage based on a provision in Clark's policy requiring that State National be given "prompt written notice" of any claims made against the insured. Clark objected to the denial of coverage via a demand letter under Massachusetts's consumer-protection statute, Mass. Gen. Laws ch. 93A, but State National held firm.

A jury found for Stormo against Clark, and the court entered judgment totaling over $5 million. The court also assigned to Stormo any claims of Clark's against State National. When State National refused to indemnify Clark by paying the judgment Stormo had won, Stormo (as Clark's assignee) sued State National in the U.S. District Court for the District of Massachusetts, beginning the lawsuit that ultimately gave rise to this appeal.

**B.**

Before delving further into the travel of this case and the issues presented on appeal, we describe Clark's policy with State National. Clark was a named insured on a "claims-made" professional-liability policy. The policy covered claims made against Clark during a specified period (March 16, 2010, through March 16, 2011) arising from any misconduct committed by Clark on or after March 1, 2002. The policy's total liability limit was $1 million. It also contained the

following provisions, the relevance of which will become apparent:

First, it provided the "prior-knowledge exclusion" relied upon by State National to disclaim coverage:

> This policy does not apply to: . . . any CLAIM arising out of any WRONGFUL ACT occurring prior to the effective date of this policy if . . . the INSURED at or before the effective date knew or could have reasonably foreseen that such WRONGFUL ACT might be expected to be the basis of a CLAIM. However, this paragraph B. does not apply to any INSURED who had no knowledge of or could not have reasonably foreseen that any such WRONGFUL ACT might be expected to be the basis of a CLAIM . . . .

Second, under the heading "LIMITS OF LIABIITY AND DEDUCTIBLE," and the subheading "MULTIPLE OF INSUREDS, CLAIMS, AND CLAIMANTS," the policy decreed that if two or more claims were to arise out of the same wrongful act, "[a]ll such CLAIMS . . . shall be considered first made on the date on which the earliest CLAIM arising out of such WRONGFUL ACT was first made and all such CLAIMS are subject to the same limits of liability and deductible."

Finally, under the heading "CONDITIONS," and the subheading "INSURED'S DUTIES PRECEDENT TO COVERAGE," the policy stated that "[i]f a CLAIM is made against any INSURED, the INSURED must give prompt written notice to [State National]."

## C.

We return to Stormo's litigation against State National in the District of Massachusetts. She pressed two claims against State National: first, that the insurance company had breached its contract with Clark; and second, that the insurance company had done so in violation of Mass. Gen. Laws chs. 93A and 176D, which prohibit unfair trade practices ("93A-176D claim"). The district court found that factual questions surrounding Stormo's breach-of-contract claim necessitated a trial. See Stormo v. State Nat'l Ins. Co., No. CV 19-10034-FDS, 2021 WL 11652293, at *8 (D. Mass. Jan. 25, 2021). At the same time, it found that while State National's denial of coverage might have been based on an incorrect interpretation of its policy, the interpretation that Clark's claim fell under the prior-knowledge exclusion "was not unreasonable, and no evidence exist[ed] that [State National had] acted in bad faith." Id. at *16. Because such a showing would have been necessary to prove Stormo's 93A-176D claim, see Bos. Symphony Orchestra, Inc. v. Com. Union Ins. Co., 545 N.E.2d 1156, 1160 (Mass. 1989), the district court granted summary judgment to State National on Clark's 93A-176D claim.

Following a trial, a jury found for Stormo on her breach-of-contract claim against State National. It awarded Stormo $1,106,138.10 in damages, and judgment was entered

accordingly. State National moved for judgment as a matter of law,[4] arguing that Stormo was not entitled to recover under Clark's policy, since Clark had breached his reporting obligations by failing to give prompt notice of Stormo's claim against him. In opposing State National's motion, Stormo argued that State National could not deny coverage for Clark's late notice alone; the insurance company had to prove it had been prejudiced by Clark's late notice. The district court sided with State National and granted judgment as a matter of law. Stormo v. State Nat'l Ins. Co., No. CV 19-10034-FDS, 2023 WL 5515823, at *1 (D. Mass. Aug. 25, 2023).

Stormo now appeals, urging us to reverse the judgment as a matter of law, to reinstate the jury's verdict, and to vacate the district court's grant of summary judgment to State National on her 93A-176D claim.

## II.

A court may grant judgment as a matter of law "if a reasonable person could not have reached the conclusion of the jury." White v. N.H. Dep't of Corr., 221 F.3d 254, 259 (1st Cir. 2000); see also Fed. R. Civ. P. 50(a)(1). "We review de

---

[4] We use the now-preferred phrase "judgment as a matter of law" rather than the phrase "judgment notwithstanding the verdict" used by the parties and the district court. See 9B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2521 (3d ed. 2023).

novo the district court's judgment as a matter of law under Rule 50." Lawes v. CSA Architects & Eng'rs LLP, 963 F.3d 72, 90 (1st Cir. 2020). We likewise "review a district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmovants and drawing all reasonable inferences in their favor." Martínez v. Novo Nordisk Inc., 992 F.3d 12, 16 (1st Cir. 2021). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Finally, because this case is before us by virtue of diversity jurisdiction, see 28 U.S.C. § 1332, "we look to the relevant state law -- here, Massachusetts law -- to supply the substantive rules of decision." President & Fellows of Harvard Coll. v. Zurich Am. Ins. Co., 77 F.4th 33, 37 (1st Cir. 2023) [hereinafter Harvard College].

### III.

### A.

An insurance company has two principal duties to the insured: a duty to indemnify and a duty to defend. Bos. Symphony Orchestra, Inc., 545 N.E.2d at 1158. Generally, an insurance company's duty to indemnify is triggered when "a judgment within the policy coverage is rendered against" an insured. Id. By contrast, the duty to defend is "antecedent

- 10 -

to" and "broader than" the duty to indemnify. Id. It arises when "the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." Metro. Prop. & Cas. Ins. Co. v. Morrison, 951 N.E.2d 662, 667 (Mass. 2011) (quoting Billings v. Com. Ins. Co., 936 N.E.2d 408, 414 (Mass. 2010)). In its disclaimer of coverage for Stormo's claim against Clark, State National "deni[ed] any obligation to defend or indemnify Clark," effectively renouncing both duties.

Count one of Stormo's complaint challenges that renunciation in full, alleging that State National twice breached its insurance policy, both by denying its duty to defend Stormo's suit against Clark and by denying its duty to indemnify Clark. Count two then alleges that State National's refusal to indemnify and defend Clark was so unreasonable as to give rise to liability under Mass. Gen. Laws chs. 93A and 176D.

Count two presumes that State National's denial was wrongful in the first place. So in order to succeed on that count, Stormo must show (among other things) that the insurance company breached at least one of its duties to Clark. See Home Ins. Co. v. Liberty Mut. Fire Ins. Co., 830 N.E.2d 186, 192 (Mass. 2005). We therefore begin by assessing whether State National was relieved of its duty to indemnify Clark by virtue of his untimely notice. We then consider whether Stormo has

- 11 -

successfully claimed that State National breached its duty to defend.

### 1.

In arguing that State National breached its duty to indemnify, Stormo contends that Clark's failure to give prompt notice of Stormo's claims against him did not by itself absolve the insurance company of its coverage obligations. Rather, she asserts that State National must also show that it was prejudiced by the late notice in order to disclaim coverage. And since the district court found that "there is no evidence that [State National] was prejudiced in any way," Stormo argues that the company improperly denied coverage.

Recall that Clark's insurance policy required him as a "condition precedent to . . . coverage" to give State National "prompt written notice" "in the event of a claim" against him. Massachusetts law provides that when, as here, "the provisions of a policy are plainly and definitively expressed, the policy must be enforced in accordance with the terms." Somerset Sav. Bank v. Chi. Title Ins. Co., 649 N.E.2d 1123, 1127 (Mass. 1995). Nevertheless, in 1977, the Massachusetts legislature codified a notice-prejudice rule for certain types of insurance policies (including, for example, motor-vehicle policies but not professional-liability policies) at Mass. Gen. Laws Ann. ch. 175, § 112. That rule effectively precludes an insurer from

raising late notice as a defense unless the lateness prejudiced the insurer.

In 1980, the Massachusetts Supreme Judicial Court ("SJC") extended the notice-prejudice rule to certain liability policies not covered by the statute, holding that "where an insurance company attempts to be relieved of its obligations . . . on the ground of untimely notice, the insurance company will be required to prove both that the notice provision was in fact breached and that the breach resulted in prejudice to its position." Johnson Controls, Inc. v. Bowes, 409 N.E.2d 185, 188 (Mass. 1980).

But this notice-prejudice rule does not occupy the field. Ten years after Johnson Controls, in Chas. T. Main, Inc. v. Fireman's Fund Ins. Co., the SJC determined that requiring a showing of prejudice did not make sense in all circumstances. 551 N.E.2d 28, 30 (Mass. 1990). To that end, it distinguished between "occurrence policies," in which "[c]overage is effective . . . if the covered act . . . occurs within the policy period, regardless of the date of discovery," and "claims-made policies," like the one at issue here, which "cover[] the insured for claims made during the policy year and reported within that period or a specified period thereafter regardless of when the covered act or omission occurred." Id. at 29. "[T]he purpose of a claims-made policy," Chas T. Main

- 13 -

explained, "is to minimize the time between the insured event and the payment." Id. at 30. Because that purpose is inherently "frustrated" by lengthy delays in reporting claims, the SJC opined that "[p]rejudice for an untimely report" under the claims-made policy at issue in the case was "not an appropriate inquiry." Id.

Stormo does not dispute that the policy here is a claims-made policy: It covers claims made against the insured during the policy period rather than claims arising from covered acts occurring during the policy period. Stormo also does not contend that Clark gave State National prompt written notice of Stormo's claim against Clark. So, Chas T. Main on its face indicates that there is no need for State National to prove that it was prejudiced by the late notice. Id.

Stormo contends, nevertheless, that if we more carefully parse Massachusetts law, we will see that whether prejudice is required to deny coverage for untimely notice actually does not turn solely on whether the policy is a claims-made or occurrence-based policy. Rather, Stormo says, it turns on the type of notice requirement in the policy.

Read by itself, the SJC opinion in Chas T. Main provides some support for this alternative reading. For in addition to contrasting occurrence-based and claims-made policies, the Chas T. Main court distinguished between two

different types of reporting requirements commonly found in insurance policies: those requiring notice within the policy period (or shortly thereafter), and those requiring notice "as soon as practicable."[5]  551 N.E.2d at 29.  In so doing, Chas T. Main linked the rationale for not requiring proof of prejudice to the function served by "policy period" notice language in a claims-made policy.  Id. at 30.

Like claims-made policies, policy-period reporting requirements promote "fairness in rate setting" by reducing the amount of time between an insured event and an insurance payout. Id. at 29-30.  The SJC thus opined in Chas T. Main that "the requirement that notice of the claim be given in the policy period or shortly thereafter in the claims-made policy is of the essence in determining whether coverage exists."  Id. at 30. Seizing on this discussion of reporting requirements, Stormo contends that the notice requirement in Clark's policy with State National ("prompt written notice") is more like an "as

_____

[5] An as-soon-as-practicable requirement "requires that notice of the claim be given to the insurer 'as soon as practicable' after the event which gives rise to coverage." Chas T. Main, 551 N.E.2d 28 at 29.  Under a "policy-period" reporting requirement, insureds must report claims "during the term of the policy or within a short period of time (thirty or sixty days) following the expiration of the policy."  Id. Occurrence-based policies almost always have "as-soon-as-practicable" requirements, but either type of reporting requirement may appear in a claims-made policy.  Id.; see also Jordan Plitt et al., 14 Couch on Insurance § 199.113 (3d ed. 2024).

soon as practicable" notice requirement and that Chas T. Main's exception to the notice-prejudice rule does not apply to the policy at issue even though it is a claims-made policy.

The problem for Stormo is that subsequent Massachusetts law has not viewed the language of the notice requirement as the variable that distinguishes policies that require proof of prejudice from those that do not. Indeed, the SJC has held that a claims-made policy with a notice requirement identical to Clark's -- that the insurance company receive "prompt written notice" of new claims -- was "not materially different" from the policy-period reporting requirement at issue in Chas. T. Main. See Tenovsky v. All. Syndicate, Inc., 677 N.E.2d 1144, 1146 (Mass. 1997). "Surely," the SJC reasoned, "'prompt' notice of 'claims made' requires that notice to the insurer be given no later than sixty days following the expiration of the policy period." Id. As in Chas. T. Main, then, the SJC in Tenovsky concluded that the insurance company was under no obligation to show prejudice in order to disclaim coverage based on the insured's late reporting. Id.

Though the policy at issue in this case contains the exact same "prompt written notice" requirement, Stormo advances a clever argument to distinguish Tenovsky. Recall that the policy in this case provides that, if two or more claims were to "aris[e] out of a single WRONGFUL ACT or a series of WRONGFUL

ACTS," then "all such CLAIMS . . . shall be considered first made on the date on which the earliest CLAIM arising out of such WRONGFUL ACT was first made . . . ." Stormo's claim against Clark -- which was made in 2014 -- is indisputably related to KGM's 2010 claim against Clark. After all, both claims arose out of Clark's conduct as the Stormo siblings' attorney during their failed property sale to KGM. As a result, the policy treats Stormo's claim against Clark as having been "made" at the same time as KGM's claim against Clark: in 2010. It would have been impossible for Clark to report Stormo's claim against him to State National in 2010; she would not file it for four more years. By contrast, the claim at issue in Tenovsky was made during the policy period. 677 N.E.2d at 1146. Hence, it was not impossible for the policyholder in Tenovsky to timely report the claim.

Due to this difference, Stormo argues that it would be "absurd" to treat the reporting requirement in Clark's policy the same as the reporting requirement in Tenovsky, even though they share the same language. Rather, since it was impossible for Clark to report Stormo's claim during the policy period, Stormo argues that our only option is to treat it as an as-soon-as-practicable requirement.

But the fact remains, no one contends that Clark gave timely notice under any formulation of the notice requirement.

And we can find no indication that Massachusetts courts have construed Chas. T. Main as Stormo proposes; i.e., to treat differences in the wording of the notice requirement as dictating whether the notice-prejudice rule applies. Rather, we find in the case law a simple and consistent focus on whether the insurance policy is a "claims-made" or "occurrence-based" policy, with the latter subject to the notice-prejudice rule and the former exempt.

Boyle v. Zurich American Insurance Co. demonstrates this approach. 36 N.E.3d 1229 (Mass. 2015). In Boyle, the SJC looked back at Johnson Controls -- the case applying the notice-prejudice rule to professional-liability policies -- and stated that:

> The approach to notice obligations prescribed by Johnson Controls . . . and its progeny concerns "occurrence"-based liability insurance policies like the one at issue in this case. Different considerations apply to "claims-made" policies. See Chas. T. Main, Inc. v. Fireman's Fund Ins. Co., 406 Mass. 862, 863–64, 551 N.E.2d 28 (1990).

36 N.E.3d at 1236 n.8. In other words, the SJC in Boyle clearly implied that the insured's "notice obligations" hinged on whether the policy is a claims-made policy or an occurrence-based policy.

Lower courts in Massachusetts have also concluded that this is the governing rule. See, e.g., Meadows Constr. Co. LLC

v. Westchester Fire Ins. Co., 180 N.E.3d 1032 (Mass. App. Ct. 2022) (unpublished table decision) (describing Chas. T. Main as holding "that an insurer need not show it was prejudiced by late notice in the case of a 'claims made and reported' policy"); Young Men's Christian Ass'n of Greater Worcester v. Nat'l Union Fire Ins. Co. of Pittsburgh, 843 N.E.2d 722 (Mass. App. Ct. 2006) (unpublished table decision) (citing Chas T. Main to support the proposition that "[p]rejudice . . . is not a factor in determining the effect of late notice under a claims-made policy").

Just recently, our court had the occasion to survey this same case law. See Harvard Coll., 77 F.4th at 38-39. While our discussion of Massachusetts law in the context of Harvard College does not control our decision here, it does demonstrate that Massachusetts case law is most easily read as limiting the prejudice requirement to occurrence-based policies. In that case, we cited the "critical distinction that the SJC has made between occurrence-based and claims-made policies," and reiterated that "the SJC promulgated a general rule that an insurer need not demonstrate prejudice before denying coverage under a claims-made policy for the insured's failure to provide timely notice." Id. at 39. No subsequent Massachusetts decisions have called our reading into question. And this

- 19 -

reading provides a more administrable rule with clarity for insureds and insurers.

## 2.

Stormo suggests that "if there were any doubt" about the application of the notice-prejudice rule to policies like Clark's, we "should certify a question of law" to the SJC. But it was Stormo who chose to bring this action in federal court, asking the district court to find a prejudice requirement where the SJC has not. As we admonished in Harvard College and cases before it, "a plaintiff who made a deliberate choice to sue in federal court rather than in a Massachusetts state court is not in a position to ask us to blaze a new trail that the Massachusetts courts have not invited." 77 F.4th at 39 (cleaned up). Nor is such a plaintiff well positioned to seek a change in decisionmakers after striking out with her original pick.

In sum, we agree with the district court that prejudice is irrelevant to this case given that all parties agree that notice of Stormo's claim against Clark was not timely given under Clark's claims-made policy. "[B]ecause Clark's notice to [State National] was too late, the policy does not provide coverage." Stormo, 2023 WL 5515823, at *7. As such, State National had no duty to indemnify Clark and therefore could not possibly have breached that duty. Stormo is thus not

entitled to recover based on State National's refusal to indemnify Clark.

**B.**

Having found that State National had no duty to indemnify Clark, we now consider the insurance company's potential liability for refusing to defend him. In Massachusetts, "a liability insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity," Boyle, 36 N.E.3d at 1235 (quoting Doe v. Liberty Mut. Ins. Co., 667 N.E.2d 1149, 1151 (Mass. 2015)), even if the insurer "could eventually be determined to have no duty to indemnify the insured," Metro. Prop. & Cas. Ins. Co., 951 N.E.2d at 668 (quoting 14 Couch on Insurance § 200:3 (3d ed. 2005)). "In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage." Billings, 936 N.E. 2d at 414 (quoting Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 341 (Mass. App. Ct. 1983)). Massachusetts courts have held that insurers are relieved of the duty to defend a claimant only "when the allegations in the underlying complaint 'lie expressly outside the policy coverage and its purpose.'" Billings, 936 N.E.2d at 414 (quoting Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 788 N.E.2d 522, 531 (Mass. 2003)).

- 21 -

Explaining our disposition of the claim that State National breached its duty to defend Clark requires that we revisit in greater detail the travel of this case. Stormo's first count alleged that State National committed a breach of contract both by refusing to indemnify Clark and by refusing to defend Clark. In count two, Stormo further alleged that both refusals were so unreasonable as to constitute an unfair claims-settlement practice under Mass. Gen. Laws chs. 93A and 176D. The district court granted partial summary judgment to State National dismissing Stormo's 93A-176D claim in its entirety, but the contractual claim for breaches of the duties to defend and indemnify went to trial. Following trial, the jury returned a general verdict for Stormo on the breach-of-contract claim, without specifying which alleged duty or duties State National breached. But on State National's motion for judgment as a matter of law, the court set aside the verdict and entered judgment for State National on count one in its entirety based on Clark's failure to give timely notice of the claim.

Stormo opposed that disposition of the jury's verdict, but she never argued that she was entitled to hang on to the verdict based on a breach of the duty to defend even if Clark's late notice negated any duty to indemnify him. Rather, in opposing the post-verdict motion for judgment as a matter of law, she simply repeated her argument that since the late notice

caused no prejudice, State National was obligated to provide coverage of Clark's claim. Her opposition motion mentioned the duty to defend only once, in service of an argument that she was entitled to damages beyond the remaining policy balance. She never suggested -- much less argued -- that even if Clark's late notice defeated his indemnity coverage, State National was still liable for its failure to defend him. And when the district court issued its decision to enter a post-verdict judgment for State National because of Clark's late notice, Stormo did not complain that the court had failed to consider whether the verdict might rest on a finding that State National breached a duty to defend. Thus, before the district court, Stormo at least forfeited -- if not waived -- this argument. See United States v. Delgado-Sánchez, 849 F.3d 1, 6 (1st Cir. 2017).

Even on appeal, Stormo does not argue that the jury verdict can stand based on a breach of the duty to defend even if there was no duty to indemnify. Rather, she focuses on (or rather, briefly mentions) the duty to defend only in the context of challenging the district court's decision granting partial summary judgment dismissing the 93A-176D claim. Stormo has thus waived any standalone argument that State National breached its duty to defend Clark. See id. We must therefore affirm the judgment as a matter of law on the count-one claim that State

National breached its policy either by failing to indemnify Clark or failing to defend him.

## C.

In light of the foregoing, we have (1) a judgment by the district court on all aspects of the count-one breach-of-contract claim; (2) the assertion below and on appeal of only one argument for reversing that judgment (the notice-prejudice rule); (3) our rejection of that argument given that the relevant policy is a claims-made policy; and (4) the resulting affirmance of the judgment in favor of State National on count one, including the claim for breach of the duty to defend.

This all means that the count-two 93A-176D claim for unreasonably breaching the policy lacks the necessary predicate: that there was such a breach in the first place. Because of the lack of timely notice under the claims-made policy, there was no duty to indemnify. And because Stormo has waived any objection to the dismissal of the contractual duty-to-defend claim, we find no breach of that contractual duty. Massachusetts law is clear that the 93A-176D claims in count two must therefore fail. See Home Ins. Co., 830 N.E.2d at 192 ("An insurer does not commit a violation of [chapter 93A] when it rightfully declines to defend a claim that is not covered by its policy."); see also Dryden Oil Co. of New England v. Travelers Indem. Co., 91 F.3d 278, 290 (1st Cir. 1996) (holding that where "defendants neither

- 24 -

breached a contractual duty to defend . . . nor a duty to indemnify," there was "[c]onsequently" no claim to be made under chapters 93A and 176D).  So we therefore need not address Stormo's other arguments, all contingent on there being a section 93A claim.

**IV.**

For the foregoing reasons, we <u>affirm</u> the district court's judgments in favor of State National.

‐ **Concurring and Dissenting Opinion Follows ‐**

BARRON, **Chief Judge, <u>dissenting in part and concurring</u> <u>in the judgment in part</u>**. I disagree with the majority's decision to affirm the grant of summary judgment to the insurer on the wrongful-denial-of-coverage claim that is before us in this appeal. The proper course, in my view, is to certify the novel state-law question on which that portion of the motion for summary judgment depends to the Supreme Judicial Court of Massachusetts ("SJC"). I thus, respectfully, dissent in part but otherwise concur in the judgment.

## I.

This case involves a dispute over what is known as a claims-made insurance policy. Claims-made policies generally cover only claims made against the insured during the policy period. <u>Chas. T. Main, Inc.</u> v. <u>Fireman's Fund Ins. Co.</u>, 551 N.E.2d 28, 29 (Mass. 1990). This claims-made policy is no different, save for one exception, the relevance of which will become apparent. Claims-made policies also always have provisions that require the insured to provide notice of the covered claims to the insurer. <u>Id.</u> This claims-made policy is, again, no different. In fact, it has two such provisions, a fact which, as I will explain, potentially bears on the proper resolution of this case.

One of the notice provisions -- which I shall refer to as the "within-policy-period" notice provision -- appears in the

section of the policy that defines the scope of this policy's coverage. It provides that, within sixty days of the policy period's end, the insured must provide the insurer with notice of any claim made against the insured within the policy period. The other notice provision -- which I shall refer to as the "prompt-written" notice provision -- appears in the section of the policy that identifies the insured's responsibilities prior to receiving payment, rather than the section outlining what is covered. It requires the insured to provide the insurer with "prompt-written" notice of any claim against the insured, without regard to when that claim was made against the insured.

The claim for which the insured here seeks coverage was first made against him only after the policy period had expired. One might think that the insured is therefore barred from obtaining coverage for that claim for reasons that have nothing to do with this policy's notice provisions. After all, as I have noted, claims-made policies generally cover only claims made against the insured during the policy period, and this one was not.

This claims-made policy, however, has an express provision that broadens the policy's scope of coverage. It does so by treating a claim made against the insured outside the policy period as having been made against the insured within that period whenever that claim is "related" to a prior

within-the-policy-period claim. Moreover, the parties agree that the claim that is at issue here is such a "related" claim. They thus agree that -- for purposes of this claims-made policy -- the insured is seeking coverage for a claim that is deemed to have been made against the insured within the policy period, though in fact it was not.

That being so, the coverage dispute over this claim turns on the insured's compliance -- or noncompliance -- with the policy's notice provisions. To be sure, the insurer does not contend that the insured failed to comply with the policy's "within-policy-period" notice provision. The insurer does not even contend that this notice provision applies to such a "related" claim -- and, understandably so. In their nature, claims of that sort may not become known to the insured until much later than sixty days after the end of the policy period. It thus makes little sense to read the provision to require that notice of those claims be provided to the insurer within that period or sooner than sixty days thereafter. To provide such notice in that time frame, as to many "related" claims, would be factually impossible.

The insurer does contend, however, that this policy's separate "prompt-written" notice provision applies to "related" claims, and the insured does not argue otherwise. Moreover, the insured does not dispute the insurer's contention that he failed

to comply with that provision, given that he first provided written notice to the insurer of this "related" claim more than a year <u>after</u> he had first learned of the claim's existence.

Thus, in the end, this coverage dispute turns on whether the insurer is required to show that it was prejudiced by the undisputed violation of the "prompt-written" notice provision. The insurer contends that it need not do so, while the insured contends the opposite.

The majority resolves this dispute in the insurer's favor. It does so based on the SJC's decision in <u>Tenovsky</u> v. <u>Alliance Syndicate, Inc.</u>, 677 N.E.2d 1144 (Mass. 1997). It reads that decision to establish a general rule that an insurer need not show prejudice to deny coverage based on an insured's violation of a claims-made policy's "prompt-written" notice provision. I do not read <u>Tenovsky</u>, however, to establish this rule. Nor do I read it to address, more narrowly, whether prejudice must be shown to deny coverage based on an insured's violation of a claims-made policy's "prompt-written" notice provision that -- like the one at issue here -- stands alongside a separate and express "within-policy-period" notice provision in the same policy.

To explain why, I will first review the precedent on which <u>Tenovsky</u> relied, <u>Chas. T. Main</u>. I will then return to <u>Tenovsky</u> itself. Finally, I will examine sources of authority

beyond Massachusetts, which, as I will explain, themselves do little to assist us in predicting how the SJC would resolve what neither Tenovsky nor Chas. T. Main do.

## II.

In Chas. T. Main, the SJC noted that there are generally two types of notice provisions to be found in insurance policies: "within-policy-period" notice provisions and "as-soon-as-practicable" notice provisions. 551 N.E.2d at 29. The SJC noted, too, that there are generally two types of insurance policies: claims-made policies and occurrence policies. Id. Finally, the SJC explained that there is a relationship between each type of notice provision and each type of insurance policy and that this relationship is of some relevance in determining whether and when an insurer must show prejudice to deny coverage based on an insured's failure to comply with an insurance policy's notice provision. Id. at 29-30.

Chas. T. Main acknowledged that, under an occurrence policy, an insurer must show prejudice before denying coverage based on an insured's failure to comply with an "as-soon-as-practicable" notice requirement, which, Chas. T. Main observed, is the type of notice provision that occurrence policies "almost always" have. Id. In doing so, the SJC reaffirmed its earlier decision in Johnson Controls, Inc. v. Bowes, 409 N.E.2d 109

(Mass. 1980). There the SJC held, in the context of an occurrence policy, that such a notice provision is subject to the notice-prejudice rule that Massachusetts law generally applies to notice provisions in insurance policies, even when a policy expressly makes compliance with that notice provision a condition precedent to coverage. Johnson Controls, 409 N.E.2d at 188.

Chas. T. Main went on to explain, however, that the notice-prejudice rule that applies to an "as-soon-as-practicable" notice provision does not apply to a claims-made policy's express "within-policy-period" notice provision. 551 N.E.2d at 30. And that is so, Chas. T. Main concluded, because of the role that "within-policy-period" notice provisions play in claims-made policies. Id.

In an occurrence policy, Chas. T. Main explained, "[c]overage is effective . . . if the covered act or covered omission occurs within the policy period, regardless of the date of discovery." Id. at 29. As a result, in offering an occurrence policy, the insurer is necessarily accepting the risk that inflation poses to accurate rate-setting for such a policy. See id. Chas. T Main explained that, for this reason, a "within-policy-period" notice provision is "never" found in an occurrence policy, as that type of policy contemplates coverage

- 31 -

for claims that the insured might discover only long after the policy period has expired.  See id.

In contrast, Chas. T. Main explained, coverage works very differently in a claims-made policy.  The whole object of a claims-made policy, Chas. T. Main noted, is to protect the insurer from the risk of inflation that inheres in insuring claims made long after the policy period.  Id. at 30.  And so, as Chas. T. Main put it, "the purpose of a claims-made policy" -- unlike the purpose of an occurrence policy -- "is to minimize the time between the insured event and the payment."  Id.

Therefore, Chas. T. Main explained, a "within-policy-period" notice provision is "always" found in a claims-made policy, as the purpose of that kind of policy is to ensure "fairness in rate-setting."  Id. at 29.  Indeed, Chas. T. Main went on to conclude, because the receipt of such notice "is of the essence in determining whether coverage exists," a claims-made policy -- "[f]or that reason" -- defines the "insured event [as both] . . . the claim being made against the insured during the policy period and the claim being reported to the insurer within that same period or a slightly extended, and specified, period."  Id. at 30 (emphases added).

In other words, Chas. T. Main reasoned, a notice provision of the "within-policy-period" kind in a claims-made policy is not -- like an "as-soon-as-practicable" notice

provision in an occurrence policy -- merely useful to the insurer. See id. Because the "within-policy-period" notice provision supports the very reason that an insurer chooses to offer a claims-made policy rather than an occurrence policy, a claims-made policy would be "frustrated" if that kind of notice provision were not included in it. See id. at 30. Chas. T. Main therefore upheld the insurer's denial of coverage for noncompliance with the policy's express "within-policy-period" notice provision -- notwithstanding an absence of any showing of prejudice -- because "[p]rejudice for an untimely report in this instance . . . is not an appropriate inquiry." Id. (emphasis added).

In so ruling, Chas. T. Main never directly addressed -- at least in so many words -- whether "as-soon-as-practicable" notice provisions in claims-made policies are subject to the same notice-prejudice rule that applies when they are found in occurrence policies. But Chas. T. Main did observe that while such notice provisions are "almost always" in occurrence policies, they also are "frequently" found in claims-made policies. Id. at 29. Moreover, as I have noted, in describing "as-soon-as-practicable" notice provisions, Chas T. Main noted that they enable the insurer's investigation of "facts and occurrences relating to liability." Id. Chas. T. Main also for that reason contrasted such notice provisions with "within-

policy-period" provisions, which Chas. T. Main described as serving the very different and essential purpose of ensuring "fairness in rate-setting" in claims-made policies. Id. at 29-30.

In my view, then, it is hard to read Chas. T. Main to indicate that a "prompt-written" notice provision is "not materially different from," Tenovsky, 677 N.E.2d at 1146, a "within-policy-period" notice provision when both types of notice provisions are included in the same claims-made policy. Chas. T. Main suggests to me that, in such a policy, there is good reason to treat the "prompt-written" notice provision the same as the "as-soon-as-practicable" type of notice provision that Chas. T. Main describes as being only "frequently" in claims-made policies but "almost always" in occurrence policies. 551 N.E.2d at 29. In that situation, the "prompt-written" notice provision -- if it is not to be redundant of the "within-policy-period" notice provision -- would appear to be merely serving the nonessential end of facilitating the insurer's investigatory capacity rather than ensuring the essential end of "fairness in rate-setting."[6]

_____

[6] Consistent with that conclusion, this policy's "prompt-written" notice provision, unlike this policy's inapplicable express "within-policy-period" notice provision, appears in the policy's section outlining conditions precedent to payment and not in its section defining the scope of its coverage. And the

- 34 -

Based on <u>Chas. T. Main</u>'s own analysis, in other words, there would appear to be a strong case for concluding that, because the "prompt-written" notice provision here <u>is</u> a companion to an express "within-policy-period" notice provision, it merely serves such a nonessential end, rather than the essential end of "fairness in rate-setting." See <u>id.</u> at 29-30. Accordingly, again based on <u>Chas. T. Main</u>'s own analysis, there would appear to be a strong case for concluding that this "prompt-written" notice provision is not "of the essence" to this claims-made policy. It would therefore appear to follow that, under <u>Chas. T. Main</u>, this notice provision is just as subject to the notice-prejudice rule as an "as-soon-as-practicable" notice provision in an occurrence policy. See <u>id.</u> at 30.

## III.

If <u>Chas. T. Main</u> fails to show that the insurer here is not required to show prejudice before denying coverage based on the insured's violation of this policy's "prompt-written" notice provision, what does? The answer, according to the majority, is <u>Tenovsky</u>.

---

policy expressly states that "[n]othing contained [in the 'prompt-written' notice provision] shall be construed as limiting the reporting requirements of [the 'within-policy-period' notice provision]," further reinforcing the two provisions' distinct functions.

The majority reads that case to make clear that a "prompt-written" notice provision in a claims-made policy is always exempt from the notice-prejudice rule in the exact same way that Chas. T. Main deemed a "within-policy-period" notice provision to be exempt. It is for that reason -- and that reason alone -- that the majority holds that this insurer need not show prejudice to deny coverage based on the insured's violation of this claims-made policy's "prompt-written" notice provision. I cannot agree with that view of Tenovsky.

Tenovsky did hold that the insurer in the case before it was not required to show prejudice to deny coverage based on the insured's violation of the "prompt-written" notice provision in the claims-made policy at issue there. 677 N.E.2d at 1146. And it is true that the words of the "prompt-written" notice provision here are "identical" to the words in the "prompt-written" notice provision in Tenovsky itself. See id. But, although the majority seizes on that fact, I fail to see why that fact necessarily means that the two provisions are "identical" in any way that matters for purposes of determining whether prejudice need be shown to deny coverage based on the violation at issue here.

As was the case in Tenovsky, the inquiry into whether the insurer needs to show prejudice here necessarily hinges on the function -- rather than the formal language -- of the notice

- 36 -

provision that the insured has violated. Because this notice provision appears in a claims-made policy that also has a "within-policy-period" notice provision, it seems most logical to treat this notice provision as an "as-soon-as-practicable" notice provision, notwithstanding that this provision does not use those precise words in describing when notice must be given. Indeed, it would be hard to see how else to treat the provision if it is to have any function independent of -- and not superfluous to -- the "within-policy-period" notice provision in this policy, which the parties agree has no application to the claim for which coverage is being sought here.

Nonetheless, the majority concludes that Tenovsky instructs that an insurer may deny coverage based on an insured's violation of a "prompt-written" notice provision without showing prejudice so long as -- and simply because -- that provision is in a claims-made policy. Of course, in the case before us, the insured reported the claim long after the policy period ended. But I do not understand the majority to suggest that its understanding of Tenovsky's exemption is limited to a circumstance in which notice is provided even later than the period that the "within-policy-period" itself gives for providing notice. The majority appears to be adopting a general rule for "prompt-written" notice provisions in claims-made policies -- and so to be adopting a rule that applies even to a

claims-made policy that, like this one, already independently requires notice to be given no later than sixty days after the policy period's end.  The majority's logic therefore necessarily suggests that it would read Tenovsky to establish that an insurer could deny coverage without showing prejudice under a claims-made policy when the insured provides the insurer with notice within the policy period, but simply fails to do so as soon as practicable.[7]

It is hard for me to see, though, how a "prompt-written" notice provision is ensuring "fairness in rate-setting" -- rather than merely facilitating the insurer's investigatory interest -- in requiring prompt notice of a claim not only made but also reported during the policy period.  As a result, it is hard for me to see how the majority's view of Tenovsky accords with Chas. T. Main.

As I have explained, Chas. T. Main strongly indicates that notice provisions that serve only that investigatory -- rather than "fairness in rate-setting" -- end are not "of the essence" to either occurrence or claims-made policies.  I thus

_____

[7] To the extent the majority means to suggest that a different case would be presented by a claims-made policy with a "within-policy-period" provision and a companion notice provision that expressly requires notice to be provided "as soon as practicable," I cannot see why we would think the SJC would make the notice-prejudice rule's application in such a case turn on that formal difference in the wording of the companion notice provision.

do not see why we would interpret Tenovsky to embrace a rule that Chas. T. Main suggests makes little sense when nothing in Tenovsky so much as hints at an intention to deviate from Chas. T. Main. Nor do I see any language in Tenovsky that purports in any clear way to adopt the broad rule the majority derives from that case.[8]

Beyond that, the facts of Tenovsky gave the SJC no reason to even contemplate -- let alone adopt -- the categorical no-prejudice rule for "prompt-written notice" provisions that the majority attributes to that decision. Unlike the claims-made policy here, the one at issue there had no express "within-policy-period" notice provision. 677 N.E.2d at 1145. Thus, the

---

[8] Indeed, to the extent that Tenovsky can be read to suggest that the language of the "prompt-written" notice provision is itself outcome determinative, adhering to its literal interpretation would counsel an exceedingly odd result here. That is so because Tenovsky held that "[i]t is apparent from the language of the [claims-made insurance policy at issue in Tenovsky] just as it is apparent from the policy considered in Chas. T. Main, Inc., that the purpose of both policies' notice provision is to produce 'fairness in rate setting' by minimizing 'the time between the insured event and the payment.'" 677 N.E.2d at 1146. As such, Tenovsky held that "prompt," as used in that policy, must be interpreted to "require[] that notice to the insurer be given no later than sixty days following the expiration of the policy period." Id. If we applied the same interpretation to the "identical" language of the "prompt-written" notice provision at issue here, that provision would be identical to, and wholly redundant of, the existing "within-policy-period" notice provision that all agree does not apply to this specific claim. Insofar as the majority views Tenovsky as controlling, taking that holding to its logical conclusion would seem to exempt the insured from having had to provide any notice at all.

"prompt-written" notice provision at issue in that case was not a mere companion notice provision, easily read to be akin to the kind of "as-soon-as-practicable" notice provisions that <u>Chas. T. Main</u> took such pains to distinguish from "within-policy-period" notice provisions. 551 N.E.2d at 29-30. It was the only notice provision in that policy at all. As such, it was the only provision in the policy that could have functioned to impose the kind of "within-the-policy" period reporting requirement that <u>Chas. T. Main</u> explained claims-made policies "<u>always</u>" have, <u>see</u> 551 N.E.2d at 29 (emphasis added).

Thus, in applying <u>Chas. T. Main</u> in <u>Tenovsky</u>, the SJC had distinct reasons -- not present here -- to treat the "prompt-written" notice provision there as if it were functionally "identical" to a "within-policy-period" notice provision, at least with respect to a claim made against the insured within the policy period (such as was at issue in that case) but only reported years after that period's end. 677 N.E.2d at 1145. And so, in applying <u>Chas. T. Main</u> in <u>Tenovsky</u>, the SJC had reasons -- not present here -- to conclude that the insurer must not have needed to show prejudice to deny coverage based on the insured's failure to satisfy the "prompt-written" notice provision there at issue.

I recognize there is also nothing in <u>Tenovsky</u> to suggest that the SJC was contemplating a policy, like this one,

with a relating-back provision that would allow a claim, itself made long after the expiration of the policy period, to nevertheless be treated as having been made within that period. I thus suppose, in consequence of this unique feature of this case, the SJC could be moved to conclude that the insurer here would not need to show prejudice to deny coverage based on the insured's failure to provide "prompt-written" notice, even if the insurer would indeed have to show prejudice to deny coverage on that basis if the claim at issue were not such a "related" one and instead had been made dilatorily but within the policy period in its own right.

But the majority does not suggest that feature of this case is relevant to the prejudice inquiry, given the categorical nature of the no-prejudice rule that it attributes to Tenovsky. And, in any event, there is good reason to doubt that the SJC would so rule. To do so, the SJC would have to overlook this insurer's choice, in agreeing to this claims-made policy's relating-back provision, to provide coverage for some late-discovered claims. The SJC thus would have to ignore this insurer's seeming choice -- through that provision -- to bargain away, at least as to such "related" claims, the interest in

ensuring fairness in rate-setting that Chas. T. Main recognized that claims-made policy insurers generally have.[9]

## IV.

That Tenovsky does not compel, and Chas. T. Main indeed points against, the majority's view of Massachusetts insurance law would seem sufficient to demonstrate that we confront the kind of state-law ambiguity that favors certification. I must consider, though, whether our own precedents or other sources of authority might nonetheless bring the clarity that is missing from the SJC's own precedents. They do not.

Starting with our own precedents, we have twice addressed how Chas. T. Main applies when it comes to the violation of a claims-made policy's notice provision. But each time we considered only a failure to comply with an express "within-policy-period" notice provision of the kind addressed in Chas. T. Main itself. See President & Fellows of Harvard Coll. v. Zurich Am. Ins. Co. ("Harvard College"), 77 F.4th 33, 38 (1st

---

[9] The other precedents the majority cites do not conflict with my understanding of the state of Massachusetts law, as they either did not involve a claims-made policy at all, see Boyle v. Zurich Am. Ins., 36 N.E.3d 1229 (Mass. 2015), or concerned an insured's breach of a "within-policy-period" notice requirement, see Meadows Constr. Co. v. Westchester Fire Ins., 180 N.E.3d 1032 (Mass. App. Ct. 2022) (unpublished table decision); Young Men's Christian Ass'n of Greater Worcester v. Nat'l Union Fire Ins. Co. of Pittsburgh, 843 N.E.2d 722 (Mass. App. Ct. 2006) (unpublished table decision).

Cir. 2023); <u>Gargano</u> v. <u>Liberty Int'l Underwriters, Inc.</u>, 572 F.3d 45, 50 (1st Cir. 2009). Thus, in neither case did we have any reason to address -- let alone endorse -- the approach the majority here derives from <u>Tenovsky</u>. Nor have we otherwise had occasion to address this area of Massachusetts insurance law.

There are high-court rulings from other states that have addressed this area of insurance law. But, if anything, they only cast further doubt on the soundness of the majority's approach, because those precedents suggest that a "prompt-written" notice provision <u>is</u> subject to the notice-prejudice rule when it appears alongside a claims-made policy's express "within-policy-period" notice provision.[10] Indeed, one of those decisions expressly relied on <u>Chas. T. Main</u> in so holding. <u>See</u> <u>Prodigy</u>, 288 S.W.3d at 381–82.

That said, I am aware of one state high court that has gone the other way. But it hardly shows that the SJC would rule for the insurer here, as that court held no prejudice needed to

_____

[10] <u>See</u> <u>Prodigy Commc'ns Corp.</u> v. <u>Agric. Excess & Surplus Ins. Co.</u>, 288 S.W.3d 374, 382 (Tex. 2009) ("In a claims-made policy, when an insured gives notice of a claim within the policy period or other specified reporting period, the insurer must show that the insured's noncompliance with the policy's 'as soon as practicable' notice provision prejudiced the insurer before it may deny coverage."); <u>Sherwood Brands, Inc.</u> v. <u>Great Am. Ins. Co.</u>, 13 A.3d 1268, 1288 (Md. 2011) (holding that the prejudice requirement "does apply . . . to claims-made policies in which the act triggering coverage occurs during the policy period, but the insured does not comply strictly with the policy's notice provisions").

be shown only while emphasizing "the importance of the characteristics of [the insured in that case:] . . . an incorporated business entity that engaged in complex financial transactions" and had negotiated for and procured the commercial liability policy at issue there through an insurance broker. Templo Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 129 A.3d 1069, 1080 (N.J. 2016); see also id. at 1081 ("In this instance we need not make a sweeping statement about the strictness of enforcing the 'as soon as practicable' notice requirement in 'claims made' policies generally.").

Finally, there is some federal precedent -- albeit not binding on us -- suggesting that a showing of prejudice is sometimes required when an insurer seeks to deny coverage based on an insured's noncompliance with a claims-made policy's "as-soon-as-practicable" notice requirement. See TRT Dev. Co. v. ACE Am. Ins. Co., 566 F. Supp. 3d 118, 127 (D.N.H. 2021) (predicting New Hampshire law); Craft v. Phila. Indem. Ins. Co., 560 F. App'x 710, 715 (10th Cir. 2014) (certifying question to the Colorado Supreme Court). I note, too, that treatise writers have consistently endorsed the view that prejudice must be shown in such a circumstance.[11]

---

[11] See Restatement of the Law of Liability Insurance § 35 cmt. h (2019) ("*Prejudice is required when notice is late but given before the end of the reporting period.*"); 13 Steven

Based on this survey of authorities beyond the SJC, I would not go so far as to say that -- at least given the novelty of the question presented -- it is evident that the SJC would rule against the insurer here. But I certainly cannot say, based on this survey, that I am confident the SJC would, as the majority predicts, rule in the insurer's favor.

## V.

The majority is right that we have stated that "a plaintiff who made a deliberate choice to sue in federal court rather than in a Massachusetts state court is not in a position to ask us to blaze a new trail that the Massachusetts courts have not invited." Harvard Coll., 77 F.4th at 39 (cleaned up). Here, however, we have come to a fork in the road, and the plaintiff is merely asking us to choose one as-yet untrod state-law path over another. Thus, rather than make that choice

---

Plitt, Daniel Maldonado, Joshua D. Rogers & Jordan R. Plitt, Couch on Insurance § 186:13 (3d ed. 2017) ("As a general statement, the prompt notice of claim requirement and the 'claims made' within the policy period requirement serve such different purposes, and are of such different basic character, that the principles applied to one should have little or nothing to do with the principles applied to the other."); John H. Mathias, John D. Shugrue & Thomas A. Marrinson, Insurance Coverage Disputes § 2.02[1][b] (2002) (concluding that an "as soon as practicable" notice requirement in claims-made policies "like . . . in occurrence policies, is not an integral part of the insuring agreement itself. Rather, its purpose is to permit an insurer the opportunity to investigate facts relating to liability, and like similar notice requirements in occurrence policies, should not be read to bar coverage unless the insurer can show prejudice from noncompliance).

unaided, I think it sensible to do what any prudent trekker would: ask for directions from an unusually reliable guide, especially when that guide's own map suggests reasons to be wary of opting for the road less traveled. Accordingly, because I would certify the underlying question of Massachusetts law to the SJC, I respectfully dissent from the decision to affirm the grant of summary judgment to the insurer on the insured's wrongful-denial-of-coverage claim.[12]

---

[12] Because the majority's decision about the notice-prejudice issue is antecedent to its decision affirming the grant of summary judgment on the plaintiff's Mass. Gen. Laws chs. 93A and 176D claim, I concur only in the judgment as to that claim, as I do agree with the district court's reasons for granting summary judgment on that claim.